CHRISTINE M. TOBIN-PRESSER (WSBA #27628)
THOMAS A. BUFORD (WSBA # 52969)
JASON WAX (WSBA #41944)
SHANE E. CREASON (WSBA #63865)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 4630
SEATTLE, WA 98101
Tel: (206) 292-2110
Email: ctobin@bskd.com; tbuford@bskd.com;
jwax@bskd.com; screason@bskd.com

JOHN E. MITCHELL (TEX. Bar #797095)**
YELENA ARCHIYAN (TEX. Bar #24119035)**
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl St. Suite 1100
Dallas, TX 75201
Tel.:  (214) 765-3600
Emails: john.mitchell@katten.com and
yelena.archiyan@katten.com

** *Pro Hac Vice* Pending

HONORABLE FEDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>BREWSTER HEIGHTS PACKING & ORCHARDS, LP,[1]<br><br>    Debtors. | Chapter 11<br><br>Lead Case No. 26-01136<br><br>Jointly Administered<br><br>DEBTORS' MOTION FOR INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN (A) SENIOR SECURED POSTPETITION FINANCING AND (B) USE OF CASH COLLATERAL; (II) GRANTING LIENS AND |

[1] The debtors are Brewster Heights Packing & Orchards, LP (Case No. 26-01136); Gebbers Farms Inc. (Case No. 26-01140); Gebbers Orchards, Inc. (Case No. 26-01141); C&M II, LLC (Case No. 26-01137); D&E Storage, LLC (Case No. 26-01138); Eastco, LLC (Case No. 26-01139); GF SA, LLC (Case No. 26-01142); Northco, LLC (Case No. 26-01143); P&G Orchards, LLC (Case No. 26-01144); REPO, LLC (Case No. 26-01145); TJF Properties, LLC (Case No. 26-01146); Westco Orchards, LLC (Case No. 26-01147); and Westco Sales, Inc. (Case No. 26-01148).

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) GRANTING ADEQUATE PROTECTION OF THE PREPETITION SECURED PARTIES; (IV) SETTING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Brewster Heights Packing & Orchards, LP ("BHPO") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") move (this "Motion") the Court pursuant to sections 105, 362, 364, 503, 506, and 507 of Title 11 of the United States Code (the "Bankruptcy Code") for an order, substantially in the form attached hereto as Exhibit A (the "Interim DIP Order"), and a final order (the "Final DIP Order,"[2] and together with the Interim DIP Order, the "DIP Orders"): (I) authorizing the Debtors to enter into a Secured Debtor-in-Possession Loan and Security Agreement (the "DIP Agreement," and together with all agreements, documents, and instruments executed and delivered in connection therewith, as hereafter amended, supplemented, or otherwise modified from time to time in accordance with the DIP Orders, the "DIP Documents") between the Debtors and the DIP Lender; (II) granting priming liens and providing superpriority claims with respect to such postpetition financing; (III) modifying the automatic stay on a limited basis as set forth herein; (IV) setting a final hearing (the "Final Hearing") to consider entry of the Final DIP Order and the DIP Agreement; and (V) granting related relief. This Motion is based upon the files and records in the above-captioned jointly administered chapter 11 cases, and the *Declaration of Brooke McGuire in Support of*

---

[2] The Debtors will file the forms of Secured Debtor-In-Possession Loan and Security Agreement and Final DIP Order prior to the Final Hearing (as defined herein).

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*the Debtors' Bankruptcy Petitions and First Day Pleadings* (the "McGuire Declaration").

**I.     OVERVIEW[3]**

The Debtors commenced these Chapter 11 Cases on June 4, 2026 (the "Petition Date"). The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases, is set forth in the McGuire Declaration, which is incorporated herein by reference.

### A.     Prudential Prepetition Loan Documents

Prior to the Petition Date, The Prudential Insurance Company of America ("Prudential") made certain loans and other financial accommodations to the Debtors or certain of them pursuant to that certain Loan Agreement dated as of May 28, 2020, by and among Prudential and the borrowers party thereto, as amended, supplemented, restated, or otherwise modified from time to time, together with the notes, mortgages, deeds of trust, security agreements, assignments of leases, rents and proceeds, crop filings, fixture filings, guarantees, forbearance agreements, modification agreements, and all other documents and instruments evidencing, securing, governing, or otherwise relating to such loans and other financial accommodations, each as amended, supplemented, restated, or otherwise modified from time to time prior to the Petition

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to such terms further below in this Motion.

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Date (collectively, the "Prudential Prepetition Loan Documents"). Prudential, together with any other holder, agent, servicer, or representative with respect to the Prudential Prepetition Obligations, is referred to herein collectively as the "Prudential Secured Parties."

**B.     Prudential Prepetition Obligations**

Pursuant to the Prudential Prepetition Loan Documents, the Debtors are justly and lawfully indebted and liable to the Prudential Secured Parties, without defense, challenge, objection, claim, counterclaim, recoupment, or offset of any kind, in the aggregate principal amount as of the Petition Date of not less than $162,340,000, plus accrued and unpaid interest, default interest, fees, expenses, attorneys' fees, indemnities, charges, premiums, costs, and all other amounts chargeable or otherwise payable under the Prudential Prepetition Loan Documents, whether arising before or after the Petition Date, in each case as and to the extent provided in the Prudential Prepetition Loan Documents (collectively, the "Prudential Prepetition Obligations").

**C.     Prudential Prepetition Liens and Prudential Prepetition Collateral**

As more fully set forth in the Prudential Prepetition Loan Documents, prior to the Petition Date, the Debtors or certain of them granted to Prudential, for itself and/or for the benefit of the Prudential Secured Parties, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the collateral described in the Prudential Prepetition Loan Documents, which includes but is not limited to the majority of Debtors' real property and certain personal property, together with all proceeds, products, offspring, rents, issues, and profits thereof, whether arising

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

before or after the Petition Date (collectively, the "Prudential Prepetition Collateral" and such liens and security interests, collectively, the "Prudential Prepetition Liens").

**D.      BMO Prepetition Financing**

Prior to the Petition Date, (i) certain Debtors and affiliated entities ("BMO Obligors") and BMO Bank, NA ("BMO") entered into that certain Loan and Security Agreement dated as of June 10, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO Syndicated Loan Agreement") and related loan documents (collectively, the "BMO Syndicated Loan Documents"), pursuant to which BMO and BMO Syndicated Lenders extended loans and other credit accommodations (the "BMO Syndicate Financing"), and (ii) BHPO entered into that certain Loan and Security Agreement dated as of August 29, 2022 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO RE Loan Agreement" and collectively with the BMO Syndicated Loan Agreement, the "BMO Loan Agreements") and related loan documents (collectively, the "BMO RE Loan Documents" and collectively with the BMO Syndicated Loan Documents, the "BMO Loan Documents"), pursuant to which BMO RE Lender extended loans and other credit accommodations (the "BMO RE Financing" and collectively with the BMO Syndicate Financing, the "BMO Financing").

**E.      BMO Prepetition Obligations**

As of the Petition Date, (i) BMO Obligors are indebted to the BMO Syndicated Lenders on account of the BMO Syndicate Financing in an amount not less than $58,832,251.70, plus additional accrued and unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

BMO Syndicated Loan Documents (collectively, the "BMO Prepetition Syndicate Obligations") and (ii) BHPO is obligated to BMO RE Lender on account of the BMO RE Financing in an amount not less than $6,569,000.08, plus additional accrued and unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the BMO RE Loan Documents (collectively, the "BMO Prepetition RE Obligations" and collectively with the BMO Prepetition Syndicate Obligations, the "BMO Prepetition Obligations").

**F.     BMO Prepetition Liens and Collateral**

Pursuant to the BMO Loan Documents, BMO Secured Parties hold valid, perfected, and non-avoidable liens and security interests (the "BMO Prepetition Liens") in and to certain assets of BMO Obligors, including, without limitation, all accounts, chattel paper, instruments, inventory, equipment, deposit accounts, investment property, general intangibles, and certain real estate, and the proceeds, products, rents, and profits, and all proceeds thereof, but expressly excluding the Debtors 2026 crop and proceeds thereof (collectively, the "BMO Prepetition Collateral"), subject only to liens validly existing and perfected as of the Petition Date that were senior in priority to the BMO Prepetition Liens and remain unavoided (the "Permitted Senior Liens").

**G.     Backstop Loan**

On March 25, 2026, BHPO, Backstop Ag Capital, a Washington Joint Venture comprising a group of non-debtor individuals with family or personal relationships with the Debtors' equity holders ("Backstop"), and Prudential entered into that certain Term Sheet (the "Backstop Ag Term Sheet"), under which Backstop agreed to provide the Debtors an $8,000,000 crop loan (the "Crop Loan") to fund (i) initial expenses relating

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

to the production of the 2026 orchard crop, (ii) administrative and advisor costs, and (iii) preparation for a chapter 11 filing, each pursuant to a budget agreed to among Backstop, the Debtors and Prudential.

## H. Backstop Collateral

The Crop Loan is secured by a first priority crop lien in the 2026 orchard crop pursuant to, inter alia, RCW 60.11.050(4), and consented to pursuant to an agreed subordination agreement with each of Prudential and BMO. Backstop's security interest is pari passu with other loans provided for the 2026 crop (the "Backstop Collateral").

## II.    REQUESTED RELIEF

The Debtors request that the Court approve a senior secured, priming and superpriority debtor in possession credit facility with advances of up to $25,000,000.00 on an interim basis and up to $50,000,000.00 in the aggregate on a final basis, plus PIK Interest and multiple of invested capital, loan fees, and attorneys' fees and costs (collectively, the "DIP Facility") to be provided by Sandton Capital Solutions Master Fund VI, LP and/or one or more of its affiliated funds and accounts (the "DIP Lender"). The DIP Facility will provide the Debtors with sufficient liquidity to stabilize and fund the Debtors' farming and corporate operations during these Chapter 11 Cases, as well as fund the administrative costs related thereto.

Absent approval of the DIP Facility, the Debtors may be left with no alternative but to cease operating and convert these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code. The liquidity provided by the DIP Facility will ensure the

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Debtors can continue operating and will provide the Debtors with sufficient time to bridge a sale of substantially all of their assets.

As discussed herein and in the McGuire Declaration, the DIP Facility was preceded by a process designed to find and secure postpetition financing on the best available terms, albeit in a limited market for such financing. The DIP Facility was the product of extensive, arm's-length negotiations first with three different lenders who submitted proposals to provide funding to the Debtors, then ultimately, with the culmination of negotiating final terms with the DIP Lender. For the avoidance of doubt, the DIP Lender is not an insider of the Debtors.

The extensive negotiations between the Debtors and the DIP Lender resulted in an agreement on the terms of a $50 million aggregate DIP Facility that will provide the Debtors with capital to administer these Chapter 11 Cases and to continue their operations uninterrupted, particularly in the midst of the apple and cherry harvest season. The provisions of the DIP Agreement and the Interim DIP Order are the most favorable terms that the Debtors were able to obtain under the circumstances. Moreover, the Debtors have an urgent need to borrow under the DIP Facility. Approval of the DIP Facility will ensure the Debtors are able to maintain their operations, administer these Chapter 11 Cases, and maximize the value of their estates for the benefit of all stakeholders.

The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Loan Term Sheet dated May 11, 2026, by and between the DIP Lender and BHPO (the "DIP Term Sheet"), and subject to (i) the entry of the Interim DIP Order, the entry of the Final Order, and approval of the DIP Term Sheet, and (ii)

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

findings by this Court that financing up to $25,000,000.00 is essential to the Debtors' estates through the Final Hearing. A copy of the DIP Term Sheet is attached hereto as Exhibit B.

The proposed DIP Facility includes an initial budget (the "Interim DIP Budget"), attached hereto as Exhibit C, with respect to amounts expected to be utilized by the Debtors for operational expenses that are necessary to prevent immediate and irreparable harm to the Debtors and their estates. Attached as Exhibit D hereto is the Debtors' proposed final budget (the "Final DIP Budget"). The Debtors are not seeking approval of the Final DIP Budget by entry of the Interim DIP Order, instead reserving approval until the Final Hearing. The Final DIP Budget will fund budgeted cash usage for the operations of the Debtors, administrative costs related to these Chapter 11 Cases, and will be subject to certain milestones, financial reporting, as well as other reporting requirements.

The DIP Facility contemplates priming liens and security interests in favor of the DIP Lender on all assets of the Debtors, other than those subject to "Permitted Senior Liens." Prudential is the senior lienholder on the bulk of the assets subject to the DIP facility priming liens and Prudential has consented to the priming liens. "Permitted Senior Liens" that will not be primed by the DIP Lender consist of:

(i)     BMO's security interest in all of the following property and assets of the Debtors, whether real, personal or mixed, or tangible or intangible, in each

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

case, as such terms are defined in the Uniform Commercial Code of Washington (the "BMO Senior Collateral"):

- BMO's security interest in Debtors' inventory of harvested Crops and other farm products grown on permanent plantings, including all harvested apples, cherries, and other tree crops (the "2025 Crop Inventory"), and all growing crops and other farm products growing on permanent plantings, including all growing apples, cherries, and other tree crops grown harvested, or otherwise severed from the Land, in each case grown during the period beginning November 1, 2024 and ending October 31, 2025 (the "2025 Crop Year") (defined herein as the "2025 Crops"), all packaging and crating related to the 2025 Crop Inventory, and all, proceeds from the 2025 Crop and 2025 Crop Inventory, including general intangibles, insurance proceeds or government payment obligations (the "2025 Crop Collateral");

- BMO's security interest in the right, with respect to the 2025 Crop Collateral, to receive monies, payments, proceeds or distributions due to Brewster Heights under that certain Amended and Restated Marketing Agreement with AltaFresh, LLC, a Nevada limited

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

liability company ("AltaFresh") dated May 24, 2021 ("Marketing Agreement Payments"), pursuant to that certain Assignment and License dated June 10, 2021 between Brewster Heights and BMO;

- With respect to the 2025 Crop Collateral, BMO's security interest in all crop allotments and rights to crop bases as designated, assigned or approved by the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department, whether federal, state or local, any and all entitlements of any borrower or mortgagor relating thereto, and any and all rights of any borrower or mortgagor (including, without limitation, the right to receive, directly or indirectly, payment whether in cash, such as deficiency payments as provided for in 7 C.F.R. Section 1413, in-kind or otherwise) under any contract or program or agreement with the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department (whether federal, state or local), relating to the that certain real

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

property subject to the BMO Mortgages (as defined below) includi34ng without limitation, the Conservation Reserve Program, or the development, ownership, management or operation thereof, in each case solely as proceeds of the 2025 Crop Collateral;

- BMO's security interest in the real property commonly known as 125 North Star Road, Brewster, WA 98812, and all fixtures, structures and improvements located thereon, as described in more detail in that certain Deed of Trust, Security Agreement, Assignment of Leases, Rents, and Profits, and Fixture Filing dated August 29, 2022, and recorded in the land records of Okanogan County, Washington on August 29, 2022, as instrument number 3266779.
- BMO's security interest in rolling stock in which BMO holds the senior Prepetition security interest.

(ii) Any purchase money security interest liens ("PMSI Liens") held by any financing party holding a valid first priority, non-avoidable PMSI lien on any equipment as of the Petition Date.

(iii) Mortgage in favor of Happy Valley USA Credit III, LLC pursuant to that certain Real Estate Term Loan 1 in the original principal amount of $4,200,000.00.

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(iv) Mortgage in favor of North Cascades National Bank pursuant to that certain Business Loan Agreement evidencing a commercial loan in the original principal amount of $1,400,000.00.

All assets of the Debtors' estates encumbered by Permitted Senior Liens will be subject to junior liens in favor of the DIP Lender. All other assets, including unencumbered assets, if any, will be subject to senior first priority liens in favor of the DIP Lender.

For the reasons set forth below, and in the McGuire Declaration, the Debtors believe that the DIP Facility will preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders, and entry into the DIP Facility is an exercise of the Debtors' sound business judgment. Accordingly, the Debtors respectfully request that the Court approve the DIP Facility on an interim basis under the terms of the Interim DIP Order and the DIP Facility Term Sheet and schedule a final hearing on the DIP Facility.

### III. MATERIAL TERMS OF DIP FACILITY

The following are the material terms of the DIP Facility:

**Loan Amount:**[4]   Interim:   $25,000,000.00
Final:   $25,000,000.00

**Maturity Date:**   The earlier to occur of: (a) the effective date of a plan; (ii) closing on a sale of substantially all of the Debtors' assets, and (iii) 9 months from   the Petition Date, subject to a one-time three (3) month extension.

---

[4] Representing committed advances, exclusive of PIK interest, loan fees, and other fees, which will be added to the maximum amount of advances authorized hereunder.

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

| | |
|---|---|
| **Interest Rate:** | No cash interest. PIK interest of 12.5% per annum, subject to a Minimum Multiple of Invested Capital (MOIC) of 1.125x on all draws under the DIP facility (exclusive of loan fees and fees/costs). Default interest rate of +3% upon event of default. |
| **Payments:** | None (payment in full upon maturity). |
| **Fees:** | Issuance Fee: 2% upon each draw.<br>Exit Fee: 2% upon each repayment.<br>Unused Line Fee: 2% per annum. |
| **Collateral:** | Other than the assets encumbered by Permitted Senior Liens (i.e. inventory and proceeds thereof arising from the 2025 crop, certain real estate collateral, and rolling stock), the collateral and priority for the DIP Facility will include pursuant to Bankruptcy Code §§ 364(c)(1), 364(c)(2), 364(c)(3), and 364(d), a fully perfected, priming first priority security interest in all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors. With respect to assets subject to Permitted Senior Liens, the DIP Lender will receive second or third liens on such assets. |
| **Advances:** | Multiple Advances (non-revolving), in minimum amounts of $5,000,000.00 per advance. |
| **Priority:** | Superpriority - § 507(b). |
| **Prepayment:** | Permitted. |

**Milestones (from Petition Date):**

- Interim Order Entered: 3 Days.
- Bid Procedures Motion Filed: 14 Days.
- Final DIP Order Entered: 35 Days.
- Bid Procedures Order Entered: 35 Days.
- Bidding Deadline: 75 Days.
- Stalking Horse Bid Deadline: 35 Days Prior to Bid Deadline.
- Auction: 85 Days.
- Sale Closing: 120 Days.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# IV. LEGAL DISCUSSION

## A. The Debtors Should be Authorized to Obtain Postpetition Financing Through the DIP Facility

**1. Entry into the DIP Documents is an Exercise of the Debtors' Sound Business Judgment.** The Court should authorize the Debtors, as an exercise of their sound business judgment, to enter into the DIP Documents and obtain access to the DIP Facility. Bankruptcy Code § 364 authorizes a debtor to obtain secured or superpriority financing under certain circumstances. Courts generally grant a debtor in possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.").

In determining whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of the debtor's authority under the [Bankruptcy] Code").

Courts consider whether the terms of postpetition financing are fair and reasonable in light of the relative circumstances of both the debtor and the potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) (while many of the terms favored the DIP lenders, "taken in context, and considering the relative circumstances of the parties," the court found them to be reasonable); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization). Courts also sometimes consider non-economic benefits a debtor may receive under a proposed postpetition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held as follows:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. **Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization**. This is particularly true in a bankruptcy

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

> setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

Here, the Debtors' decision to enter into the DIP Facility is an exercise of their sound business judgment following extensive negotiations with other potential funding sources, the DIP Lender, an arm's-length process, a search for other financing options, and the Debtors' careful evaluation of their limited available alternatives. Considering the insufficiency of their existing cash resources and their lack of viable alternatives, the Debtors and their advisors determined that the Debtors need the DIP Facility to support their operations and related costs of administration during these Chapter 11 Cases. The Debtors' ability to operate their businesses, including the continued cultivation and harvest of the 2026 crop, depends on having access to sufficient liquidity. The Debtors negotiated the DIP Term Sheet, and will continue to negotiate and finalize the DIP Agreement and other DIP Documents with the DIP Lender in good faith, at arm's-length, and with the assistance of their respective advisors, and the Debtors believe that they have obtained the best financing available to give them an opportunity to consummate a successful restructuring. Accordingly, the Debtors' entry into the DIP Documents is a reasonable exercise of their business judgment, and it should be approved.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**2.** **The Debtors Should Be Authorized to Obtain the DIP Facility on a Secured and Priority Basis.** The Debtors propose to obtain financing under the DIP Facility by providing security interests and liens to the DIP Lender as set forth in the DIP Documents pursuant to Bankruptcy Code § 364(c) and (d). In particular, as collateral security for the DIP Obligations pursuant to and in accordance with Bankruptcy Code § 364(c) and (d), the Debtors will grant the DIP Lender valid, perfected, continuing, enforceable, non-avoidable and priming first priority liens and security interests on all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) (the "DIP Collateral").

The DIP Collateral of each Debtor (the "DIP Liens"), except as expressly provided herein, shall prime all other liens and security interests on the DIP Collateral, including any liens and security interests in existence on the Petition Date, and any other current or future liens granted on the DIP Collateral, including any adequate protection or Replacement Liens granted on the DIP Collateral (the "Primed Liens").

Notwithstanding the foregoing, the DIP Liens (i) shall be *pari passu* with the Backstop Collateral, with the DIP Lender possessing the sole and exclusive right to administer the DIP Collateral before and after a default, and (ii) shall not have first priority, but shall have second priority or third priority, as the case may be, solely with respect to Permitted Senior Liens.

A debtor may obtain postpetition credit under Bankruptcy Code § 364(c) or (d) if the court finds, after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. §

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 18 of 155

364(c); *see also In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under Bankruptcy Code § 364(c) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under Bankruptcy Code § 364(c), including whether: (i) the debtor is unable to obtain unsecured credit under Bankruptcy Code § 364(b), i.e., by allowing a lender only an administrative claim; (ii) the credit transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders. *See In re Ames Dep't Stores*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

As described above and as set forth in the McGuire Declaration, the Debtors have an immediate need for financing to continue their operations uninterrupted on a postpetition basis. Without postpetition financing, the Debtors lack sufficient funds to operate their enterprise, continue paying their debts as they come due, and cover the projected costs of these Chapter 11 Cases. Absent the DIP Facility, which will allow the Debtors to meet their working capital needs during these Chapter 11 Cases, the value of the Debtors' estates would be significantly impaired to the detriment of all stakeholders. Under the circumstances, the Debtors believe that the terms of the DIP Facility, as set forth in the DIP Agreement, are fair, reasonable, and adequate. As a result, the Debtors submit that they have met the standard for obtaining postpetition financing and granting the required liens and claims.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

When a debtor is unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1), Bankruptcy Code § 364(c) provides that a court "may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c). Furthermore, the Court may also authorize the obtaining of credit secured by senior liens on property already of the estate that is already subject to a lien if the debtor is unable to obtain credit otherwise, and, there is adequate protection given to the existing lienholder. 11 U.S.C § 364(d).

As described above, the Debtors are unable to obtain unsecured credit sufficient to meet their needs. Therefore, approving a superpriority claim in favor of the DIP Lender as well as first-priority liens on all property of the Debtors subject only to Permitted Liens is reasonable and appropriate, most notably because Prudential has consented to the "priming" of their lien interests.

**3.** **No Comparable Alternative to the DIP Facility is Reasonably Available.** A debtor is only required to show "by a good faith effort that credit was not available without" the protections afforded to lenders under Bankruptcy Code § 364(c). *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, when only a few lenders are likely to be willing or able to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr.

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

As explained in this Motion, the Debtors believe alternative sources of financing are not reasonably available under the Debtors' circumstances and given the nature of the Debtors' businesses. Therefore, the Debtors submit that the requirement of Bankruptcy Code § 364 that alternative credit on more favorable terms be unavailable to the Debtors is satisfied.

**B.      The Fees under the DIP Documents are Reasonable**

Under the DIP Documents, the Debtors have agreed, subject to Court approval, to pay certain fees to the DIP Lender in connection with the DIP Facility. The Debtors understand that payment of such fees is a required component of debtor in possession financing arrangements. The Debtors believe the fees payable under the DIP Facility are "market" as compared to fees typically charged by lenders in connection with debtor in possession financing facilities of similar size. Accordingly, the Debtors submit that their agreement to pay the fees required under the DIP Facility is reasonable, appropriate, and a sound exercise of the Debtors' business judgment, and

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 21 of 155

request that the Court authorize the Debtors to pay such fees in connection with the initial draw and on a go-forward basis as and to the extent required under the DIP Facility.

**C.** **The Debtors Should Be Authorized to Continue to Use Cash Collateral in Exchange For the Provision of Adequate Protection**

For the reasons set forth herein, the Debtors require the use of cash collateral (as well as the proceeds of the DIP Facility) for working capital and to fund the Restructuring Transactions. Section 363(c) of the Bankruptcy Code governs a debtor's use of a secured creditor's Cash Collateral. Section 363(c) provides, in pertinent part, that:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363]. 11 U.S.C. § 363(c)(2).

Furthermore, section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

The Debtors have satisfied the requirements of sections 363(c)(2), (d) and (e) and should be authorized to obtain credit and use cash collateral. Prudential and BMO have

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

consented to the Debtors' use of cash collateral in accordance with the terms and conditions of the Interim DIP Order, the DIP Facility, and the Interim DIP Budget. Subject to Court approval, the Debtors are also providing adequate protection (as discussed below) to Prudential and BMO. The Debtors therefore submit that the proposed adequate protection is (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2), (d) and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtors and their estates.

**D.      The Carve-Out is Appropriate**

The DIP Facility subjects the DIP Lender's security interests, superpriority administrative expense claims, and the adequate protection claims and liens to the carve-out ("Carve-Out"), which means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors (the "Debtor Professionals") or the Creditors' Committee pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (the "Committee Professionals", and together with the Debtor Professionals, the "Estate Professionals") (in each case, other than any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) at any time before or on

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the day of delivery by the DIP Agent (acting at the direction of Required Lenders) of a Carve-Out Trigger Notice (as defined below) and without regard to whether such fees and expenses are provided for in any Approved Budget, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the amounts set forth in this clause (iii) being the "Pre-Carve-Out Trigger Notice Cap"); and (iv) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $250,000 incurred on or after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, (the amount set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap" and, together with the Pre-Carve-Out Trigger Notice Cap and the amounts set forth in clauses (i) through (ii), the "Carve-Out Cap"); provided that nothing herein shall be construed to impair the ability of any party in interest to object to the fees, expenses, reimbursement or compensation described in this paragraph 4(b) on any grounds. The Carve-Out shall be subject to the applicable restrictions on the use of proceeds of the DIP Loans and Cash Collateral.

Without the Carve-Out, the Debtors' estates or other parties in interest could be deprived of possible rights and powers because the services professionals might otherwise provide in these chapter 11 cases could be restricted. *See In re Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties in interest are sorely prejudiced"). Additionally, the Carve-Out protects against administrative insolvency during the pendency of the Chapter 11 cases by ensuring that assets are available to pay professional fees and the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

U.S. Trustee's fees, notwithstanding the grant of superpriority and administrative liens and claims under the DIP Facility and the Interim DIP Order. Accordingly, the Debtors submit that the Carve-Out is appropriate.

**E.     The DIP Lender Should be Deemed a Good Faith Lender Under Bankruptcy Code § 364(e)**

Bankruptcy Code § 364(e) protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal, providing as follows:

> The reversal or modification on appeal of an authorization under this section [Bankruptcy Code § 364] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). As explained above and in the McGuire Declaration, the Debtors have negotiated the DIP Facility with the DIP Lender at arm's length and in good faith, and the Debtors have determined in their reasonable judgment that the DIP Facility provides the best terms available for postpetition financing. The Debtors believe the terms and conditions of the DIP Documents are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. The DIP Facility will permit the Debtors to run a Court-approved sale process for their assets on a postpetition basis. As a result,

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Court should find that the DIP Lender qualifies as a lender in "good faith" within the meaning of Bankruptcy Code § 364(e) and is entitled to all of the protections afforded by that section.

**F.    <u>The Automatic Stay Should be Modified on a Limited Basis.</u>**

The proposed Interim DIP Order provides that the automatic stay provisions of Bankruptcy Code § 362 will be modified to, among other things, (i) permit the Debtors to grant the DIP Liens and DIP Superpriority Claim; (ii) permit the Debtors to perform such acts as the DIP Lender may reasonably request to assure the perfection and priority of the liens granted herein; (iii) permit the Debtors to incur all liabilities and obligations to the DIP Lender under the DIP Documents, the DIP Facility, and the Interim DIP Order; and (iv) authorize the Debtors to make, and the DIP Lender to retain and apply, payments made in accordance with the terms of the Interim DIP Order and the DIP Documents.

Paragraph 6 of the proposed Interim DIP Order also modifies the automatic stay to permit the DIP Lender to take certain actions without further Court approval, including termination of the DIP Facility and the exercise of certain other remedies, following the occurrence of an Event of Default and the expiration of a required 5-day Remedies Notice Period, unless the Court orders otherwise.

Modifications of the stay such as these are normal features of debtor in possession financing arrangements and, in the Debtors' business judgment, are reasonable and fair under the circumstances of these Chapter 11 Cases. *See, e.g., In re Magnum Hunter Res. Corp.*, No. 15-12533 (Bankr. D. Del. Dec. 15, 2015) (terminating automatic stay after event of default); *In re Peak Broad., LLC*, No. 12-10183 (Bankr.

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event).

### G. Failure to Obtain Immediate Access to the DIP Facility on an Interim Basis Would Cause the Debtors Immediate and Irreparable Harm.

Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code § 364 may not be commenced earlier than 14 days after the service of such motion. The Court may, however, conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate prior to the end of the 14-day period.

Accordingly, the Debtors request that the Court hold a hearing on an expedited basis to consider entry of the Interim DIP Order, authorizing the Debtors, from and after entry of the Interim DIP Order until the Final Hearing, to receive immediate funding under the DIP Facility. The Debtors require the initial funding under the DIP Facility prior to the Final Hearing and entry of the Final DIP Order to continue operating, to pay their administrative expenses, and to implement the relief requested in the Debtors' other "first day" motions. This interim and expedited relief will enable the Debtors to preserve and maximize value and to avoid immediate and irreparable harm to their estates and all parties in interest, pending the Final Hearing.

### V. CONCLUSION

Based on the foregoing, the Debtors respectfully request entry of an order, substantially in the forms of the Interim DIP Order submitted herewith, (I) authorizing the Debtors to enter into the DIP Facility as set forth in the DIP Agreement; (II)

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

granting liens and providing superpriority claims with respect to such postpetition financing; (III) modifying the automatic stay on a limited basis as set forth herein; (IV) setting a Final Hearing to consider entry of the Final DIP Order; and (V) granting related relief.

DATED this 5th day of June, 2026.

BUSH KORNFELD LLP


By /s/ Jason Wax
Christine M. Tobin-Presser, WSBA #27628
Thomas A. Buford, WSBA #52969
Jason Wax, WSBA #41944
Shane E. Creason, WSBA #63865

and

John E. Mitchell (*Pro Hac Vice* Pending)
Yelena E. Archiyan (*Pro Hac Vice* Pending)
Katten Muchin Rosenman LLP
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Telephone: (214) 765-3600
Emails: john.mitchell@katten.com
and yelena.archiyan@katten.com

Proposed Attorneys for the Debtors

DEBTORS' MOTION FOR INTERIM ORDER
AUTHORIZING POSTPETITION FINANCING AND
SETTING A FINAL HEARING – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT A



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| BREWSTER HEIGHTS PACKING & ORCHARDS, LP,[1] | Lead Case No. 26-01136 |
| Debtors. | Jointly Administered |
| | [PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING |

Upon the motion dated June 5, 2026 (the "Motion") of Brewster Heights Packing and Orchards, LP and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking,

[1] The debtors are Brewster Heights Packing & Orchards, LP (Case No. 26-01136); Gebbers Farms Inc. (Case No. 26-01140); Gebbers Orchards, Inc. (Case No. 26-01141); C&M II, LLC (Case No. 26-01137); D&E Storage, LLC (Case No. 26-01138); Eastco, LLC (Case No. 26-01139); GF SA, LLC (Case No. 26-01142); Northco, LLC (Case No. 26-01143); P&G Orchards, LLC (Case No. 26-01144); REPO, LLC (Case No. 26-01145); TJF Properties, LLC (Case No. 26-01146); Westco Orchards, LLC (Case No. 26-01147); and Westco Sales, Inc. (Case No. 26-01148).

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of an interim order (this "Interim Order") authorizing the Debtors to enter into a senior secured, superpriority debtor-in-possession financing facility with Sandton Capital Solutions Master Fund VI, LP in the aggregate principal amount on an interim basis of not more than $20 million; the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of Brooke McGuire in Support of the Debtors' Bankruptcy Petition and First Day Pleadings* (the "McGuire Declaration"); and the Court having held a hearing on June [9], 2026, to consider entry of this Interim Order (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the McGuire Declaration, and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, and all other parties in interest;

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 31 of 155

and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and to prevent immediate and irreparable harm to the Debtors' estates; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.  **Petition Date**. On June 4, 2026 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Washington (the "Court") commencing the Chapter 11 Cases.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

B.  **Jurisdiction and Venue**. The Court has jurisdiction over these Chapter 11 Cases and related proceedings, pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and related proceedings on the Motion is proper in this district

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of final orders by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C. **Notice**. Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, and the Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Interim Hearing, or this Interim Order shall be required.

D. **No Control**. Sandton Capital Solutions Master Fund VI, LP and/or one or more of its affiliated funds or accounts (individually and collectively, "DIP Lender") was not and is not in control of persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility.[3]

E. **Immediate Need for Postpetition Financing**. Good cause has been shown for entry of this Interim Order. The immediate ability of the Debtors to preserve and maintain the value of their assets requires the availability of working capital from the DIP Facility to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance

---

[3] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

with the terms hereof (including access to the DIP Facility), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their crop would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with the terms of this Interim Order.

F. **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain credit on more favorable terms and conditions than those provided in this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claims and without granting the adequate protection as and to the extent set forth herein.

G. **Debtors' Stipulations Regarding Prudential Secured Parties**. Subject only to the limitations contained in Paragraph 8 of this Interim Order, and after consultation with their attorneys and financial advisors, and in exchange for and as a material inducement to The Prudential Insurance Company of America's agreement to entry of this Interim Order, including the subordination of the Prudential Prepetition Liens to the Carve Out and the DIP Liens to the extent set forth herein, the Debtors admit, stipulate, acknowledge, and agree as follows:

i. *Prudential Prepetition Loan Documents*. Prior to the Petition Date, The Prudential Insurance Company of America ("Prudential") made certain loans and other financial accommodations to the Debtors or certain of them pursuant to that certain Loan Agreement dated as of May 28, 2020, by and among Prudential and the borrowers party thereto, as amended, supplemented, restated, or otherwise modified from time to time, together with the notes, mortgages, deeds of trust, security agreements, assignments of leases, rents and proceeds, crop filings, fixture filings,

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 5

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

guarantees, forbearance agreements, modification agreements, and all other documents and instruments evidencing, securing, governing, or otherwise relating to such loans and other financial accommodations, each as amended, supplemented, restated, or otherwise modified from time to time prior to the Petition Date (collectively, the "Prudential Prepetition Loan Documents"). Prudential, together with any other holder, agent, servicer, or representative with respect to the Prudential Prepetition Obligations, is referred to herein collectively as the "Prudential Secured Parties".

ii. *Prudential Prepetition Obligations*. Pursuant to the Prudential Prepetition Loan Documents, the Debtors are justly and lawfully indebted and liable to the Prudential Secured Parties, without defense, challenge, objection, claim, counterclaim, recoupment, or offset of any kind, in the aggregate amount as of the Petition Date of not less than $162,340,000, plus accrued and unpaid interest, default interest, fees, expenses, attorneys' fees, indemnities, charges, premiums, costs, and all other amounts chargeable or otherwise payable under the Prudential Prepetition Loan Documents, arising before the Petition Date, in each case as and to the extent provided in the Prudential Prepetition Loan Documents (collectively, the "Prudential Prepetition Obligations").

iii. *Prudential Prepetition Liens and Prudential Prepetition Collateral*. As more fully set forth in the Prudential Prepetition Loan Documents, prior to the Petition Date, the Debtors or certain of them granted to Prudential, for itself and/or for the benefit of the Prudential Secured Parties, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the collateral described in the Prudential Prepetition Loan Documents, together with all proceeds, products, offspring, rents, issues, and profits thereof, whether arising before or after the Petition Date (collectively, the "Prudential Prepetition Collateral" and such liens and security interests, collectively, the "Prudential Prepetition Liens").

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

iv. *Validity, Perfection, and Priority*. The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prudential Prepetition Liens were valid, binding, enforceable, non-avoidable, and properly perfected, and were granted for fair consideration and reasonably equivalent value; (b) the Prudential Prepetition Liens were senior in priority over any and all other liens on the Prudential Prepetition Collateral, subject only to the Carve Out, the DIP Liens, the Permitted Senior Liens (defined *infra*), and any other liens that were valid, perfected, non-avoidable, and senior in priority to the Prudential Prepetition Liens as of the Petition Date; (c) the Prudential Prepetition Obligations constitute legal, valid, binding, enforceable, and non-avoidable obligations of the Debtors; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature exist with respect to any of the Prudential Prepetition Obligations, the Prudential Prepetition Liens, or the Prudential Prepetition Collateral; and (e) no portion of the Prudential Prepetition Obligations or the Prudential Prepetition Liens is subject to avoidance, disallowance, disgorgement, recharacterization, subordination, reduction, setoff, recoupment, impairment, or any other challenge under the Bankruptcy Code or applicable non-bankruptcy law.

v. *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to any Prudential Secured Parties (in their capacity as such) under any agreements by and among the Debtors and such Prepetition Secured Parties.

vi. *Release*. Effective as of the entry of this Interim Order, each of the Debtors and, subject to Paragraph 8 of this Interim Order, each of the Debtors' estates, on behalf of itself and its predecessors, successors, assigns, subsidiaries, affiliates, officers, directors, managers, partners, members, shareholders, employees, agents, attorneys, advisors, and representatives, hereby absolutely, unconditionally, and irrevocably releases, acquits, and forever discharges each of the Prudential Secured

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 36 of 155

Parties, and each of their respective current and former affiliates, agents, representatives, servicers, officers, directors, managers, members, partners, employees, attorneys, financial advisors, consultants, professionals, successors, and assigns, each in its respective capacity as such (collectively, the "Prudential Released Parties"), from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions, causes of action, and obligations of any kind or nature, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, arising at any time on or before the date of entry of this Interim Order and relating in any way to the Prudential Prepetition Loan Documents, the Prudential Prepetition Obligations, the Prudential Prepetition Liens, the Prudential Prepetition Collateral, or the prepetition relationship, conduct, transactions, negotiations, forbearances, modifications, administration, enforcement, or exercise of rights and remedies between or among the Debtors and any of the Prudential Released Parties; provided, however, that the foregoing release shall not release any claim or liability that a court of competent jurisdiction determines by final, non-appealable order resulted from the bad faith, fraud, gross negligence, or willful misconduct of such Prudential Released Party.

vii. *No Control.* None of the Prudential Secured Parties or Prudential Released Parties, by virtue of any action taken with respect to, in connection with, related to, or arising from the Prudential Prepetition Loan Documents, the Prudential Prepetition Obligations, the Prudential Prepetition Liens, the Prudential Prepetition Collateral, or the negotiation or implementation of this Interim Order, controls or has controlled the Debtors or their properties or operations, has authority to determine the manner in which any Debtor's operations are conducted, or is a control person or insider of any Debtor.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### H. Stipulations and Adequate Protection for BMO Bank, N.A.

Subject only to the limitations contained in Paragraph 8 of this Interim Order, and after consultation with their attorneys and financial advisors, and in exchange for and as a material inducement to BMO Bank, N.A.'s ("BMO") agreement to entry of this Interim Order, the Debtors admit, stipulate, acknowledge, and agree as follows:

i. Prior to the Petition Date, (i) certain Debtors and affiliated entities ("BMO Obligors") entered into that certain Loan and Security Agreement dated as of June 10, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO Syndicated Loan Agreement") and related loan documents (collectively, the "BMO Syndicated Loan Documents"), pursuant to which BMO and BMO Syndicated Lenders extended loans and other credit accommodations (the "BMO Syndicate Financing"), and (ii) BHPO entered into that certain Loan and Security Agreement dated as of August 29, 2022 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO RE Loan Agreement" and collectively with the BMO Syndicated Loan Agreement, the "BMO Loan Agreements") and related loan documents (collectively, the "BMO RE Loan Documents" and collectively with the BMO Syndicated Loan Documents, the "BMO Loan Documents"), pursuant to which BMO RE Lender extended loans and other credit accommodations (the "BMO RE Financing" and collectively with the BMO Syndicate Financing, the "BMO Financing").

ii. <u>Prepetition Obligations</u>. As of the Petition Date, (i) BMO Obligors are indebted to the BMO Syndicated Lenders on account of the BMO Syndicate Financing in an amount not less than $56,456,440.61, plus additional accrued and

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 38 of 155

unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the BMO Syndicated Loan Documents (collectively, the "BMO Prepetition Syndicate Obligations") and (ii) BHPO is obligated to BMO RE Lender on account of the BMO RE Financing in an amount not less than $6,569,000.08, plus additional accrued and unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the BMO RE Loan Documents (collectively, the "BMO Prepetition RE Obligations" and collectively with the BMO Prepetition Syndicate Obligations, the "BMO Prepetition Obligations"). Debtors stipulate that BMO Prepetition Obligations (a) constitute actual, legal, valid, binding, and enforceable obligations of BMO Obligors, (b) are not subject to any objection, offset, recoupment, defense, avoidance, subordination, counterclaim, disallowance, impairment, recharacterization, or other claim, cause of action, or challenge of any kind or nature, whether under the Bankruptcy Code or similar law, under non-bankruptcy law, or otherwise, and (c) are not subject to any claim of recharacterization, subordination, avoidance, or other claims of any kind or nature, except for any subordination governing BMO Permitted Senior Liens (as defined below) and this Interim Order, including, without limitation, claims arising under or pursuant to Bankruptcy Code §§ 105, 510, or 542 through 553, 724 or 726.

iii. <u>BMO Prepetition Liens and Collateral</u>. Pursuant to the BMO Loan Documents, but subject to multiple intercreditor, lien priority and subordination agreements by and between BMO and Prudential, BMO Secured Parties hold valid, perfected, and non-avoidable liens and security interests (the "BMO Prepetition Liens") in and to substantially all personal property assets of BMO Obligors, including, without

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 39 of 155

limitation, all accounts, chattel paper, instruments, inventory, equipment, deposit accounts, investment property, general intangibles, and certain real estate, and the proceeds, products, rents, and profits, and all proceeds thereof, excluding the crops now growing or hereafter grown, planted or produced, and all accounts, cash, payment intangibles, rights and other products and proceeds of the crops grown during the period beginning November 1, 2025 and ending October 31, 2026 ("Excluded 2026 Crop") (collectively, with the exception of the Excluded 2026 Crop, the "BMO Prepetition Collateral"), subject only to liens validly existing and perfected as of the Petition Date that were senior in priority to the BMO Prepetition Liens (by agreement or otherwise) and remain unavoided (the "BMO Permitted Senior Liens"). Debtors stipulate that BMO Prepetition Liens (a) constitute actual, legal, valid, enforceable, duly perfected, and non-avoidable security interests and liens in and upon the BMO Prepetition Collateral senior in priority to all other prepetition liens, security interests, interests, and claims, subject only to BMO Permitted Senior Liens, and (b) are not subject to any objection, defense, offset, avoidance, subordination, or other claim, cause of action, or challenge of any kind or nature, whether under the Bankruptcy Code or similar law, under non-bankruptcy law, or otherwise.

    iv.  Debtors are not authorized to use, and shall not directly or indirectly use, collect, transfer, dissipate, or encumber, or seek approval or authority to use, collect, transfer, dissipate, or encumber cash collateral arising from BMO Prepetition Collateral (the "BMO Cash Collateral") absent BMO's prior written consent or Order of this Court.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11  Doc 29  Filed 06/05/26  Entered 06/05/26 17:07:01  Pg 40 of 155

v. As partial adequate protection, Debtors shall cause to be paid to BMO, for application to the BMO Prepetition Obligations in BMO's sole discretion, payments (the "BMO Inventory AP Payments") to be delivered to BMO, equal to the amount of the net proceeds (gross receipts less customary, documented third-party sales/commission charges actually incurred and paid to non-insiders in the ordinary course and approved by BMO) generated from the packing and sale of Debtors' produce inventory existing as of the Petition Date or otherwise constituting BMO Collateral (the "BMO Inventory Collateral"), wherever located, whether received or realized by any Debtor or received or held by third-party sales agents/brokers, which parties (including, without limitation, Apple House, AltaFresh d/b/a Chelan Fresh and any other applicable grower counter parties) are directed to continue remitting such net proceeds directly to BMO, including to the BMO cash collateral account immediately upon disbursement; and for the avoidance if doubt, all such amounts shall constitute BMO Inventory AP Payments and shall be automatically applied by BMO upon receipt without the need for weekly reconciliation or further authorization.

vi. <u>Assumption of Executory Contracts Relating to BMO Inventory Collateral</u>. On or before July 2, 2026, BHPO shall obtain an Order authorizing the assumption pursuant to section 365 of the Bankruptcy Code of (a) that certain Grower Contract, dated as of February 11, 2026 (as amended, restated, supplemented, or otherwise modified from time to time, the "Apple House Packing Agreement"), provided, however, that any applicable cure payment due under 11 U.S.C. § 365 shall be paid using BMO Cash Collateral. BHPO is authorized to perform and shall timely perform pursuant to the terms of the Apple House Packing Agreement.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 41 of 155

vii.     BMO Replacement Liens. Effective as of the Petition Date, pursuant to Bankruptcy Code §§ 361 and 363(e), Debtors are hereby deemed to have granted to BMO, for the benefit of BMO Secured Parties, valid, binding, continuing, automatically perfected replacement liens (the "BMO Replacement Liens") on (a) all postpetition assets of Debtors and their estates of the same type and kind as the BMO Prepetition Collateral (the "BMO Postpetition Collateral" and collectively with the BMO Prepetition Collateral, the "BMO Collateral"), and (b) all proceeds, products, offspring, rents, issues, profits, and other proceeds of the BMO Prepetition Collateral and the BMO Postpetition Collateral, including, without limitation, the BMO Segregated DIP Account (defined herein), in each case to the extent of any diminution in value of the BMO Prepetition Liens occurring during the Cases (the "Diminution"). The BMO Replacement Liens shall attach automatically to all such property, whenever acquired and wherever located, without further act, and shall be deemed perfected for all purposes upon entry of this Interim Order, without further act, and enforceable against all parties in interest. Without limiting the foregoing, BMO, in its discretion, may file financing statements, amendments, continuations, notices, mortgages, and other instruments or documents, and may to cause the filing and recordation of this Interim Order or any document evidencing the BMO Replacement Liens with any recording or filing office or agency, in each case without further order of the Court.

viii.     Priority of BMO Replacement Liens. The BMO Replacement Liens shall be (i) senior to all liens, claims, and interests in the BMO Senior Collateral, and (ii) junior to the BMO Permitted Senior Liens, if any, and the DIP Liens on collateral other than the BMO Senior Collateral, and (iii) of equal priority to the BMO Prepetition

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11     Doc 29     Filed 06/05/26     Entered 06/05/26 17:07:01     Pg 42 of 155

Liens to the extent the BMO Prepetition Liens continue in proceeds under Bankruptcy Code § 552(b) and applicable nonbankruptcy law except the (x) BMO Permitted Senior Liens, if any, and (y) the DIP Liens on collateral other than the BMO Senior Collateral. Nothing herein authorizes the priming (whether of senior or pari passu priority) of the BMO Prepetition Liens on BMO Senior Collateral, or the BMO Replacement Liens, including, without limitation, liens, interests, and claims, if any, granted pursuant to the DIP Liens on such BMO Senior Collateral. Subject to the foregoing, BMO consents to the priming of any liens on BMO Collateral other than the BMO Senior Collateral. For the avoidance of doubt, and other than with respect to BMO Collateral other than the BMO Senior Collateral, any order authorizing or approving DIP financing or the use of cash collateral (of any other secured party and not BMO Secured Parties) entered in these Cases shall be expressly subordinate to BMO's liens on the BMO Senior Collateral and the BMO Replacement Liens in BMO Senior Collateral and all other protections granted to BMO Secured Parties pursuant to this Interim Order unless BMO otherwise consents in writing.

ix. <u>Budget, Reporting, and Access</u>. (a) Debtors shall deliver to BMO all interim, final and subsequently modified DIP Budgets and copies of all other reports required to be delivered to other parties in the Cases at such dates that such reports are required to be <u>delivered</u> to such parties. Beginning on and after June 17, 2026, the Debtors shall also, on a weekly basis separately identify all collections, remittances, expenses, commissions, returns, credits, and other activity relating to the BMO Inventory Collateral and all balances in the BMO Segregated DIP Account. (b) Debtors shall provide BMO reasonable access during normal business hours, upon reasonable

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 43 of 155

notice, to inspect the BMO Collateral and to review and copy books and records relating to the BMO Collateral, and shall cooperate with reasonable field exams or audits by BMO and its professionals. (c) In addition, Debtors shall promptly furnish such additional information regarding the BMO Collateral, operations, or liquidity as BMO may reasonably request.

x. <u>Segregated DIP Deposit Account for BMO Inventory Collateral Proceeds</u>. To the extent Debtors are able to cause proceeds of BMO Inventory Collateral to be (i) <u>remitted</u> directly by third parties to BMO or (ii) deposited directly to the BMO cash collateral account, no segregated account shall be required for such proceeds. No other authorization or consent is needed for those parties to remit those payments. Upon the request of BMO, for any other funds that are proceeds of BMO Senior Collateral, Debtors shall establish a "BMO Segregated DIP Account" at an institution acceptable to BMO no later than five (5) business days after entry of the Order approving BMO's stipulation with Debtors, and without limiting the automatic attachment and perfection of the BMO Replacement Liens in and to the BMO Segregated DIP Account, shall execute and deliver, and shall cause the applicable depository bank to execute and deliver, a deposit account control agreement in form and substance acceptable to BMO. Such amounts deposited into the BMO Segregated DIP Account (which shall be encumbered by the BMO Replacement Liens), shall be remitted to BMO immediately upon receipt as BMO AP Payments and, pending remittance, shall not be used for any purpose whatsoever.

xi. <u>BMO Superpriority Claim</u>. If the adequate protection provided in this Interim Order <u>proves</u> insufficient to protect against Diminution, then BMO shall

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code §§ 503(b) and 507(b) (the "BMO Superpriority Claim") in an amount equal to such insufficiency, which BMO Superpriority Claim shall be expressly subordinate to any superpriority claim granted to the DIP Lender, and pari passu in priority with any superpriority claim granted to Prudential, but otherwise have priority over all administrative expenses and unsecured claims against Debtors and their estates except for the DIP Superpriority Claim, including under Bankruptcy Code §§ 503(b), 506(c), 507(a), and 726(b). After payment of the DIP Superpriority Claim, the BMO Superpriority Claim shall be payable from all prepetition and postpetition property of the estates, whether now existing or hereafter arising.

xii. <u>Milestones</u>. Time is of the essence. Debtors shall meet the following milestones unless <u>extended</u> by BMO in writing: (a) the entry of a final adequate protection order in the Cases in form and substance acceptable to BMO no later than July 2, 2026; (b) filing of a plan of reorganization and disclosure statement in the Cases (collectively, the "Debtors' Plan") or a motion to sell substantially all assets pursuant to Bankruptcy Code § 363 in the Cases (the "Debtors' Sale Motion") no later than ninety (90) days after the Petition Date; and (c) the entry of an order confirming the Debtors Plan or entry of an order approving the Debtors Sale Motion no later than one hundred fifty (150) days after the Petition Date (collectively, the "BMO Milestones"). Failure to satisfy any BMO Milestone shall constitute an immediate Event of Default not subject to any cure period unless BMO otherwise agrees in writing.

xiii. <u>Challenge Period</u>. As further adequate protection: (a) subject to the rights of parties in <u>interest</u> other than Debtors, Debtors' stipulations regarding the BMO

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 45 of 155

Prepetition Obligations and BMO Prepetition Liens are binding. (b) Any action or proceeding by an official committee (if appointed) or any other party in interest with standing (excluding Debtors) challenging the validity, extent, priority, or enforceability of the BMO Prepetition Obligations or the BMO Prepetition Liens (a "Challenge") must be commenced by filing an adversary proceeding or contested matter no later than 5:00 p.m. (Pacific Time) on the date that is sixty (60) days after the Petition Date (the "BMO Challenge Deadline"). (c) If no committee is appointed, and a trustee is appointed before the Challenge Deadline, such trustee shall have the later of the BMO Challenge Deadline or ten (10) days after appointment to commence a Challenge. Absent a timely Challenge, the BMO Prepetition Obligations and BMO Prepetition Liens shall be deemed allowed, valid, perfected, enforceable, and non-avoidable for all purposes in these cases, subject only to Permitted Senior Liens, if any, and as otherwise provided herein. Any pleading commencing a Challenge shall set forth with particularity the factual and legal basis for such Challenge, and any Challenge not timely commenced and properly pleaded shall be forever barred.

xiv. <u>No Implied Waivers</u>. Except as expressly provided herein, nothing in this Interim Order <u>waives</u>, limits, or impairs any rights or remedies of BMO under the BMO Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law.

I. **Adequate Protection for Prepetition Secured Lenders**.

i. The Prudential Secured Parties and BMO (Prudential Secured Parties and BMO, <u>collectively</u>, the "Prepetition Secured Lenders") are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to Bankruptcy Code sections 361, 362, 363, and 364. Based on the DIP

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including the Cash Collateral), and the Prepetition Secured Lenders in each case have consented or are deemed hereby to have consented to the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including the Cash Collateral), the priming of the respective Prudential Prepetition Liens and BMO Junior Liens by the DIP Liens pursuant to the terms set forth in this Interim Order and the DIP Documents; *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by the Prepetition Secured Lenders for the use of Cash Collateral other than on the terms set forth in this Interim Order and in context of the DIP Financing authorized by this Interim Order to the extent such consent has been or is deemed to be have been given, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prudential Prepetition Collateral or BMO Prepetition Collateral (whether junior or senior) other than as contemplated by the DIP Financing authorized by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of the Prepetition Secured Lenders to seek new, different, or additional adequate protection, as applicable, or assert any rights of the Prepetition Secured Lenders, and the rights of any other party in interest, including the Debtors, to object to such relief are hereby preserved.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ii.       Accordingly, under the circumstances of the Chapter 11 Cases, together with the agreement of the Prepetition Secured Lenders to the entry of this Interim Order and the senior, priming liens granted herein in favor of the DIP Lender, as applicable, the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Prepetition Secured Lenders.

iii.      The DIP Facility is critical to the Debtors' ability to preserve the Debtors' assets; is in the best interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors, their creditors and their assets, businesses, goodwill, reputation, and employees. Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and operations.

J.       **Extension of Financing**. The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Loan Term Sheet dated May 11, 2026, by and between DIP Lender and Brewster Heights Packing and Orchards, LP (the "DIP Term Sheet" and the financing described therein, the "DIP Facility"), and subject to (i) the entry of this Interim Order, the entry of the Final Order, and approval of the DIP Term Sheet, and (ii) findings by this Court that financing up to $25 million is essential to the Debtors' estates through the Final Hearing.  A copy of the DIP Term Sheet is attached hereto as Exhibit A.[4]

---

[4] Prior to the Final Hearing, and subject to Court approval, the DIP Lender and the Debtors will enter into definitive loan and security documents evidencing the DIP Facility as described in the DIP Term Sheet, and such definitive loan and security documents are collectively referred to herein as the "DIP Loan Documents."  Entry of the Interim Order shall not commit the DIP Lender to provide additional financing under

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

K.     **Business Judgment and Good Faith Pursuant to Section 364(e)**. The terms and conditions of the DIP Facility, as set forth in the DIP Term Sheet, (including the fees, expenses, and other amounts paid and to be paid thereunder), are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the DIP Term Sheet by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses. The DIP Lender is entitled to the protection and benefits of Bankruptcy Code section 364(e).  The Prepetition Secured Lenders acted in good faith regarding the DIP Financing and the Debtors' use of the Prepetition Lenders' Collateral, respectively, to fund the administration of the Debtors' estates and continued operation of their businesses, including the incurrence and performance of the Prudential Adequate Protection Claims (defined *infra*), payment of the BMO AP Payments out of the BMO Cash Collateral, and the granting of the Prudential Adequate Protection Liens (defined

---

the DIP Facility inconsistent with the DIP Term Sheet and the DIP Loan Documents and the security contemplated therein.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*infra*) and BMO Replacement Liens, in accordance with the terms hereof, and the Prepetition Secured Lenders and their successors and assigns shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code to the fullest extent applicable.

L. **Relief Essential; Best Interests**. The relief requested in the Motion (and granted or otherwise provided for in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility with an interim draw of $20 million and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender.

**NOW**, **THEREFORE**, based upon the foregoing, and after due consideration and good cause appearing therefore, it is

**ORDERED as follows:**

1. **Motion Granted in Part**. The Motion is granted in part in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2. **DIP Facility.**

a. *DIP Obligations*. The Debtors are expressly and immediately

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

authorized, empowered, and directed, on an interim basis, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility, up to $25 million during the interim period, in accordance with this Interim Order and the DIP Term Sheet. The issuance fee associated with the initial draw of $25 million, pursuant to the DIP Term Sheet, and all other fees set forth in the DIP Term Sheet, shall be an administrative priority claim subject to entry of a Final DIP Order. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Facility, and other amounts described herein and in the DIP Term Sheet as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, interest, MOIC, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations"). The DIP Facility and all DIP Obligations shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or refer to any particular provision of the DIP Term Sheet or any other agreement in this Interim Order shall not diminish or impair the effectiveness of such provision.

b. *Authorization to Borrow*. In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, and draw up to $25 million during the interim period, and, subject to any conditions or limitations set forth in the DIP Term Sheet, to borrow under the DIP Facility.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

c. *DIP Collateral*. As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, crops, farm products, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

d. *DIP Liens*. Effective immediately upon entry of the Interim Order, and subject to the Carve Out, and as set forth more fully in this Interim Order and the DIP Facility, the DIP Lender is hereby granted, as collateral security for the DIP Obligations pursuant to and in accordance with sections 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and, except as expressly provided in this subsection (d) below, shall prime all other liens and security interests on the DIP Collateral, other than the Permitted Senior Liens (defined *infra*), including any liens and security interests in existence on the Petition Date, and

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 52 of 155

any other current or future liens granted on the DIP Collateral, including any adequate protection or Replacement Liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Interim Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion. The DIP Liens, DIP Superpriority Claims (defined below) and other rights and remedies granted under this Interim Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Term Sheet and this Interim Order. Notwithstanding the foregoing, the DIP Liens (i) shall be *pari passu* with the Bridge Lender's Prepetition Secured Claim in the Bridge Lender's Prepetition Collateral, with DIP Lender possessing the sole and exclusive right to administer the DIP Collateral before and after a default, and (ii) shall not have first priority, but shall have second priority or third priority, as the case may be, solely with respect to the following permitted senior liens (the "Permitted Senior Liens"):

      i.     BMO's security interest in all of the following property and assets of the Debtors, whether real, personal or mixed, or tangible or intangible, in each case, as such terms are defined in the Uniform Commercial Code of Washington:

      (a) BMO's security interest in Debtors' inventory of harvested

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 53 of 155

Crops and other farm products grown on permanent plantings, including all harvested apples, cherries, and other tree crops (the *"2025 Crop Inventory"*), and all growing crops and other farm products growing on permanent plantings, including all growing apples, cherries, and other tree crops grown harvested or otherwise severed from the Land, in each case grown during the period beginning November 1, 2024 and ending October 31, 2025 (the "2025 Crop Year") (defined herein as the *"2025 Crops"*) , all packaging and crating related to the 2025 Crop Inventory, and all, proceeds from the 2025 Crop and 2025 Crop Inventory, including general intangibles, insurance proceeds or government payment obligations (the "2025 Crop Collateral");

(b) BMO's security interest in with respect to the 2025 Crop Collateral, to receive monies, payments, proceeds or distributions due to Brewster Heights under that certain Amended and Restated Marketing Agreement with AltaFresh, LLC, a Nevada limited liability company ("AltaFresh") dated May 24, 2021 ("Marketing Agreement Payments"), pursuant to that certain Assignment and License dated June 10, 2021 between Brewster Heights and BMO;

(c) With respect to the 2025 Crop Collateral, BMO's security interest in all crop allotments and rights to crop bases as designated, assigned or approved by the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department, whether federal, state or local, any and all entitlements of any borrower or mortgagor relating thereto, and any and all rights of any borrower or mortgagor (including, without limitation, the right to receive, directly or indirectly, payment whether in cash, such as deficiency payments as

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

provided for in 7 C.F.R. Section 1413, in-kind or otherwise) under any contract or program or agreement with the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department (whether federal, state of local), relating to the that certain real property subject to the BMO Mortgages (as defined below) including without limitation, the Conservation Reserve Program, or the development, ownership, management or operation thereof, in each case solely as proceeds of the 2025 Crop Collateral;

(d) BMO's security interest in the real property commonly known as 125 North Star Road, Brewster, WA 98812, and all fixtures, structures and improvements located thereon, as described in more detail in that certain Deed of Trust, Security Agreement, Assignment of Leases, Rents, and Profits, and Fixture Filing dated August 29, 2022, and recorded in the land records of Okanogan County, Washington on August 29, 2022, as instrument number 3266779.

(e) Vehicles, rolling stock, and farm machinery (including tractors, combines and other farm machinery) and portable irrigation motors on wheels customarily towed by a motorized vehicle ((a)-(e) above, collectively, the "BMO Senior Collateral").

ii. Other than Prudential Collateral, any security interest or consensual lien held by any financing third party holding a valid first priority, non-avoidable purchase money lien on any equipment of the Debtors as of the Petition Date.

iii. Mortgage in favor of Happy Valley USA Credit III, LLC pursuant to that certain Real Estate Term Loan 1 in the original principal amount of

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

$4,200,000.00.

iv. Mortgage in favor of North Cascades National Bank pursuant to that certain Business Loan Agreement evidencing a commercial loan in the original principal amount of $1,400,000.00.

e. *DIP Superpriority Claims*. Effective immediately upon entry of this Interim Order, pursuant to Bankruptcy Code section 364(c)(1), and subject in each case to the Carve-Out, the DIP Facility shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Debtors who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

3. **Authorization and Approval to Use DIP Facility Proceeds**. Subject to the terms and conditions of this Interim Order, the DIP Facility, and the Interim DIP Budget attached hereto as Exhibit B ("Interim DIP Budget"), each Debtor is authorized to use the DIP Facility proceeds, up to $25 million during the interim period. The Debtors shall provide weekly variance reports to the DIP Lender and Prepetition Secured Lenders (i.e., reports reflecting the difference between the budgeted amount of revenue and expenses and the actual amounts) in the same format as the Interim DIP Budget (the "Variance Reports"). Said Variance Reports shall be due on or before 5:00 p.m. (prevailing Pacific Time), beginning on June 17, 2026, and continuing on the same day of each following week until termination of this Interim Order or the entry of a Final Order. Absent express written consent of the DIP Lender, it shall constitute a DIP Termination Event if any Variance Report reflects a negative variance of greater than 20% in the aggregate trailing rolling disbursements for a given week under the Interim DIP Budget. Notwithstanding anything to the contrary in this Interim Order, the DIP Term Sheet, any DIP Loan Documents, the Interim DIP Budget, or any other order of the Court, the Debtors shall not make or seek authority to make any payments on account of (a) prepetition claims under any critical vendor, essential vendor, 503(b)(9), lien claimant, or similar program (collectively, "Critical Vendor Payments") or (b) any key employee retention plan, key employee incentive plan, management incentive plan, bonus, retention, severance, transaction, sale, change-in-control, or similar compensation program (collectively, "KERP Payments"), in each case without the prior written consent of the DIP Lender and the Prudential Secured Parties; provided that the Prudential Secured Parties consent shall be deemed given solely with

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

respect to any Critical Vendor Payment or KERP Payment that is specifically identified by payee, amount, timing, and purpose in a DIP Budget approved in writing by the Prudential Secured Parties.

4. **Adequate Protection for Prepetition Secured Lenders**. The Prepetition Secured Lenders are provided adequate protection by their consent to entry of this Interim Order, through their Replacement Liens on their Prepetition Collateral, and, as applicable, Permitted Senior Liens, and solely to the extent of any diminution in the value of their respective interests in the Prepetition Collateral resulting from, among other things, and only to the extent applicable, the subordination to the Carve Out and to the DIP Liens, the Debtors' use, sale, or lease of such Prepetition Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender) any claims arising on account of such Diminution in Value, the "Prepetition Secured Lender Adequate Protection Claims."

Accordingly, under the circumstances of the Chapter 11 Cases, the Replacement Lien, Permitted Senior Liens (as applicable), together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Prepetition Secured Lenders.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

a. *Senior Secured Lenders' Adequate Protection Liens*. The Senior Secured Lenders are hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, (i) in the case of Prudential, in the amount of the Prudential Adequate Protection Claims valid, perfected replacement security interests in and liens upon all of the DIP Collateral (the "Prudential Adequate Protection Liens"), (ii) in the case of BMO, in the amount of the BMO Adequate Protection Claim, valid, perfected replacement security interests in and liens upon all of the BMO Prepetition Collateral (the "BMO Adequate Protection Liens"), in each case subject and subordinate only to the DIP Liens, the DIP Superpriority Claims, the Carve-Out and, solely with respect to assets subject to Permitted Senior Liens, such Permitted Senior Liens

i. *Section 507(b) Claims*. The Prudential Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prudential Adequate Protection Claims, which, to the fullest extent permitted under the Bankruptcy Code, shall be junior in priority to the DIP Superpriority Claims and the Carve-Out, pari passu with the BMO Superpriority Claim, and senior in priority in payment over any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Prudential 507(b) Claims"), which Prudential 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 59 of 155

Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, but including, subject to entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise, from such avoidance actions, whether by judgment, settlement or otherwise. The Prudential Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prudential 507(b) Claims unless and until the DIP Obligations have been indefeasibly paid in cash in full and all commitments under the DIP Facility have been terminated.

5. **Perfection of DIP Liens and Adequate Protection Liens**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing:

a. The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code section 362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

b. The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 31

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 60 of 155

documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

c. In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

6. **Effect of DIP Termination Event**

a. *DIP Termination Event*. For purposes of this Interim Order, the term "DIP Termination Event" shall mean: (i) the occurrence of the Repayment Date (as defined in the DIP Term Sheet), (ii) the occurrence of any material breach under this Interim Order by the Debtors or an Event of Default under the DIP Term Sheet, which Events of Default include (aa) failure to timely achieve any of the Chapter 11 Milestones set forth in the DIP Term Sheet or this Interim Order, (bb) material breach of any covenant set forth in the DIP Term Sheet or this Interim Order, (cc) misuse of the DIP Facility proceeds, and (dd) dismissal or conversion of any of the Chapter 11 Cases, or appointment of a trustee, or (iii) the acceleration of the DIP Obligations or termination of the DIP Facility in accordance with the terms of the DIP Term Sheet or this Interim Order. For the avoidance of doubt, upon the sale of all or any portion of the DIP Collateral, the proceeds of such sale of DIP Collateral shall be used to pay the DIP Obligations unless otherwise agreed by the DIP Lender. Debtors' acceptance of an

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 61 of 155

offer to sell all or any portion of the DIP Collateral that would not pay the DIP Obligations in full shall constitute a DIP Termination Event.

b. *Exercise of Remedies*. Upon the occurrence of a DIP Termination Event, of which written notice (including via email) of the occurrence of such DIP Termination Event is delivered by the DIP Lender to the Notice Parties (as defined herein) (the "Remedies Notice" and such date, the "DIP Termination Declaration Date"), without further notice to, hearing of, application to, or order from this Court, subject to the expiration of the Remedies Notice Period (as defined below), the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any of the following actions, at the same or different time: (i) declare the termination, reduction or restriction of any commitments under the DIP Facility to the extent any such commitment remains; (ii) declare all DIP Obligations to be immediately due and payable, without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the Debtors; (iii) declare the termination, restriction or reduction of the DIP Facility and the DIP Term Sheet as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims, or the DIP Obligations; (iv) charge default interest at the default rate set forth in the DIP Term Sheet; and (v) declare the termination, restriction, or revocation of the ability of the Debtors to use cash DIP Collateral.

c. *Remedies Notice Period*. The Debtors may seek an emergency hearing solely during the period beginning on the DIP Termination Declaration Date and through the date that is five (5) business days after the DIP Termination

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 62 of 155

Declaration Date (such period, the "Remedies Notice Period"). If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Remedies Notice Period, the Remedies Notice Period shall be deemed automatically extended until such time as the matter can be heard by the Court. At any hearing regarding a Remedies Notice, the Court may only consider whether an Event of Default has occurred or is continuing (other than, for the avoidance of doubt, the occurrence of the Repayment Date under the DIP Term Sheet). During the Remedies Notice Period, the Debtors shall not have the right to receive DIP Facility advances without the consent of the DIP Lender in its sole discretion, but shall continue to have the right to use DIP Collateral in accordance with the terms of this Interim Order and the Interim DIP Budget, solely to pay any expenses necessary to (i) preserve the Debtors' going-concern value or (ii) contest, in good faith, the occurrence of the Event of Default (other than, for the avoidance of doubt, the occurrence of the Repayment Date under the DIP Term Sheet); provided, however, that the professional fees and expenses of the Professional Persons (as defined below) shall be governed by terms hereof and subject to the Interim DIP Budget in all respects.

d. *Rights and Remedies Following Termination Date*. Following the expiration of the Remedies Notice Period and, unless the Repayment Date has not occurred and this Court has entered an order prior to the expiration of the Remedies Notice Period finding that an Event of Default has not occurred or is not continuing, the DIP Lender shall be entitled to exercise all rights and remedies in accordance with this Interim Order, the DIP Term Sheet, the other DIP Loan Documents (if any), applicable law, and the automatic stay of section 362 of the Bankruptcy Code shall automatically,

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 63 of 155

without further order of this Court, be lifted, to allow the DIP Lender to pursue all rights and remedies in accordance with the DIP Term Sheet, the other DIP Loan Documents (if any), this Interim Order, and applicable law.

7. **Carve-Out.** The DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the Carve Out or as otherwise provided in this Interim Order. The Carve Out shall mean a carve-out in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in an aggregate amount not to exceed $50,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons"), provided however, that in the event of a DIP Termination Event, Professional Fees incurred on and after the first business day following delivery of the Remedies Notice shall not exceed $250,000 in the aggregate.

8. **Effect of Stipulations on Third Parties**.

a. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, Findings G and H hereof (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors and any

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 64 of 155

successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' Stipulations shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (a) such committee or any other party in interest with requisite standing (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, in this paragraph) by no later than (i)(x) as to the Committee only, 60 calendar days from the formation of the Committee, (y) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee and chapter 11 trustee) to the date that is the later of (1) 60 calendar days after entry of this Interim Order, or (2) the date that is 30 calendar days after the appointment of such chapter 7 or chapter 11 trustee, and (z) as for all other parties in interest, 60 calendar days after entry of this Interim Order; (ii) any such later date as has been agreed to in writing by the Debtors, the DIP Lender, and the Prepetition Secured Lenders; or (iii) any such later date as has been ordered by the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 65 of 155

Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Lenders' Prepetition Obligations or the Prepetition Secured Lenders' Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Lenders or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Secured Lenders' Prepetition Loan Documents, the Prepetition Secured Lenders' Prepetition Obligations, the Prepetition Secured Lenders' Prepetition Liens and the Prepetition Secured Lenders' Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred, including any amended or additional claims that may or

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

could have been asserted thereafter through an amended complaint under Fed. R. Civ. P. 15 or otherwise.

b. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' Stipulations shall be binding on all parties in interest; (2) the obligations of the Debtors under the Prepetition Secured Lenders' Loan Documents, including the Prepetition Secured Lenders' Obligations, shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, claim, counterclaim, cross-claim, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, recoupment, offset, avoidance, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (3) the Prepetition Secured Lenders' Liens on the Prepetition Secured Lenders' Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, claim, counterclaim, cross-claim, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, recoupment, offset, avoidance, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity; and (4) the Prepetition Secured Lenders' Obligations and the Prepetition Secured Lenders' Liens on the Prepetition Secured Lenders' Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates,

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 38

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Lenders and their Representatives arising out of or relating to any of the Prepetition Secured Lenders' Loan Documents, the Prepetition Secured Lenders' Obligations, the Prepetition Secured Lenders' Liens and the Prepetition Secured Lenders' Collateral shall be deemed forever waived, released and barred.

c. If any such Challenge is timely filed during the Challenge Period, the Debtors' Stipulations shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such Debtors' Stipulations were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Secured Lenders' Loan Documents, the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Prepetition Secured Lenders' Obligations or the Prepetition Secured Lenders' Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.

9. **Other Rights and Obligations**.

a. *Expenses*. The Debtors will be responsible for the DIP Lender's out of pocket reasonable fees and expenses incurred by the DIP Lender to negotiate and put the DIP Facility in place, to document the DIP Facility, to manage the DIP Facility, and to enforce the terms of the DIP Obligations. For the avoidance of doubt, the DIP Lender is authorized to apply the Expense Deposit (as defined in the DIP Term Sheet) to pay the fees and expenses described herein.

b. *Binding Effect*. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and the Prepetition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 cases.

c. *Limitation on Surcharge.* No costs or expenses of administration of the Chapter 11 Cases or any successor case(s), or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, including Cash Collateral, or the Prudential Prepetition Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or the Prudential Secured Parties, as applicable, and no

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 69 of 155

consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prudential Secured Parties. Nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender or the Prudential Secured Parties to any charge, lien, assessment, or claim against the DIP Collateral or the Prudential Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise; provided further that the foregoing waiver shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of such Final Order.

d. *Application of Collateral Proceeds*. To the extent required by this Interim Order and the DIP Term Sheet, unless otherwise ordered by the Court, after (a) a DIP Termination Event and (b) the receipt by the Debtors of written notice that the DIP Lender will no longer fund the Debtors through the proceeds of the DIP Facility, the Debtors are hereby authorized to remit to the DIP Lender, subject to the payment of the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral subject to the lien priorities set forth in Paragraph 2(d) herein until the DIP Obligations are paid in full, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Term Sheet. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, security interest in favor of the DIP Lender, of first priority except to extent of any Permitted Senior Liens thereon, (b) upon the occurrence and during the continuance of an Event of Default (as defined

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

in the DIP Term Sheet), each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Lender to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Lender by wire transfer (to such account as the DIP Lender shall specify, or in such other manner as the DIP Lender shall direct) all such cash, securities, investment property and other items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance that is or may be invoked against the DIP Lender and (c) any deposit account or securities account control agreement executed and delivered by any bank or other financial institution or any Debtor prior to the Petition Date shall establish co-control in favor of the DIP Lender of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in favor of any Prepetition party shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lender, until all of the DIP Obligations have been paid in full in cash.

e. *No Marshaling*. In no event shall the DIP Lender or the Prudential Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to *the* DIP Collateral, the DIP Obligations, the Prudential Prepetition Obligations, the Prudential Adequate Protection Claims, or the Prudential Prepetition Collateral; provided that the foregoing waiver shall be without prejudice to

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 42

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

any provisions of the Final Order. Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prudential Secured Parties with respect to proceeds, products, offspring, or profits of any Prudential Prepetition Collateral; provided that the foregoing waiver shall be without prejudice to any provisions of the Final Order.

f. *Collateral Rights.* Subject to this Interim Order and any further order of the Court *entered* without the objection of the DIP Lender authorizing the Debtors to make payments to prepetition creditors, if any party who holds a lien or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Obligations in accordance with the DIP Term Sheet and this Interim Order until the DIP Obligations are indefeasibly paid in full in cash.

g. *Injunction.* Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on DIP Collateral or any portion thereof to any other party, *pursuant* to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lender except in accordance with the DIP Term Sheet and this Interim Order.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

h. *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not *create* any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

i. *Limits on Lenders' Liability.* Nothing in this Interim Order or in the DIP Term Sheet or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts. In (a) administering the DIP Facility, (b) extending other financial accommodations to the Debtors under the DIP Term Sheet, and (c) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Term Sheet or this Interim Order or (y) be deemed to be exercising control over any operations of the Debtors or acting in any way as a responsible person.

j. *Amendment*. The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Term Sheet without further notice to or approval of the Court (but upon two (2) Business Days' prior notice, solely to the extent reasonably practicable under the circumstances, having been given to counsel to the Committee (if any) *and* the U.S. Trustee of any formal amendment or modification; *provided* that such notice shall not be deemed to create any Committee or U.S. Trustee approval rights, unless such amendment or modification, (a) increases the interest rate or fees charged in connection with the DIP Facility (other than consent or amendment

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 73 of 155

fees in connection with such amendment or modification); or (b) increases the commitments of the DIP Lender to make extensions of credit under the DIP Facility. Except as otherwise provided herein, no other waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender, as applicable, and approved by the Court after notice to parties in interest.

k.     *Priority of Terms*. To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Term Sheet, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Term Sheet, the terms and provisions of this Interim Order shall govern.

l.     *Survival of Interim Order*. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order (if entered), the terms and provisions of this Interim Order, including all

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 45

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the rights, remedies, powers, privileges, liens, priorities, the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order or the Final Order, and any protections granted to or for the benefit of the Prepetition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claims shall maintain their priorities as provided by this Interim Order and the DIP Term Sheet, until all of the DIP Obligations have been indefeasibly paid and fully satisfied.

m. *Dismissal and Conversion*. If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens and the DIP Superpriority *Claims*, granted hereunder and in the DIP Term Sheet, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claims. Any order dismissing any of these Chapter 11 Cases shall not be effective until the DIP Liens on the DIP Collateral are fully perfected under applicable non-bankruptcy law.

n. *Subsequent Reversal or Modification*. This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 75 of 155

(c), granting the DIP Lender all protections and benefits afforded by section 364(e) of the Bankruptcy Code.

o. *Enforceability*. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the *Petition* Date immediately upon execution hereof.

p. *Assignment*. The DIP Lender may assign the DIP Facility, along with the DIP Collateral and DIP Liens, *without* consent or court, and the assignee shall have all the rights of DIP Lender hereunder.

q. *Waiver of any Applicable Stay*. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is *hereby* waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

r. *Reservation of Rights of Prepetition Secured Lenders*. Under the circumstances and given that the above-*described* adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Lenders; provided that the Prepetition Secured Lenders may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request.

10. **Final Hearing**. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for July __, 2026, at _:__ a/p.m. (prevailing Pacific Time) at the United States Bankruptcy Court for the Eastern District

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 47

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 76 of 155

of Washington. The Debtors shall promptly mail copies of this Interim Order to the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee Counsel, if the same shall have been appointed. Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than June __, 2026, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors; (b) counsel to the DIP Lender; (c) counsel for Prudential; (d) counsel for BMO; (e) counsel to any Committee; and (f) the U.S. Trustee (collectively, the "Notice Parties").

11. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

/// End of Order ///

Presented by:

BUSH KORNFELD LLP

By_____
   Christine M. Tobin-Presser, WSBA #27628
   Thomas A. Buford, WSBA #52969
   Jason Wax, WSBA #41944
   Shane E. Creason, WSBA #63865

  and

   John E. Mitchell (*Pro Hac Vice* Pending)
   Yelena E. Archiyan (*Pro Hac Vice* Pending)
   Katten Muchin Rosenman LLP
   2121 N. Pearl Street, Suite 1100
   Dallas, TX 75201
   Telephone: (214) 765-3600
   Emails: john.mitchell@katten.com
   and yelena.archiyan@katten.com

Proposed Attorneys for the Debtors

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 48

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 77 of 155

# EXHIBIT B

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 78 of 155

# DIP LOAN TERM SHEET

## Brewster Heights Packing and Orchards, LP and Each of its Affiliates Companies

This term sheet (this "Term Sheet") summarizes the principal terms of a financing (the "DIP Loan") between the Borrowers and Sandton Capital Partners, LP and its Assigns ("Sandton" or "Lender") for a sale of the Borrower's business to a stalking horse bidder in a planned bankruptcy proceeding. Until such time as the Borrower achieves approval by the Bankruptcy Court (as defined below) and entry of the Interim DIP Order (as defined below) and the Final DIP Order (as defined below), each in form and substance acceptable to Lender, this Term Sheet is not a commitment to lend and is not binding upon Sandton. By receipt of these terms and conditions, the recipient acknowledges that these materials are confidential and proprietary to Sandton and, in consideration for Lender providing these materials to the recipient, the recipient undertakes not to disclose or provide these materials to third parties (except as set forth below under the heading "Confidentiality") without the consent of Sandton.

| | |
|---|---|
| **Lender:** | Sandton Capital Solutions Master Fund VI, LP and/or one or more of its affiliated funds and accounts (the "Lender"). |
| **Borrowers:** | Brewster Heights Packing and Orchards, LP and the direct and indirect subsidiaries identified as signing parties hereto (collectively, the "Borrowers").[1] |
| **DIP Loan Amount:** | Lender will provide a loan (the "DIP Loan") to Borrowers up to a funded amount not in excess of $72.0 million (the "Total Commitment Amount") based on the DIP Budget and as set forth in Funded Amount below, subject to the entry of an interim (the "Interim DIP Order") and a final order (the "Final DIP Order") approving the DIP Loan by the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court"). |
| **Use of Proceeds:** | The DIP Loan will be available to Borrowers to fund operating expenses, portfolio company needs, restructuring costs, professional fees, case administration costs, repayment of any pre-petition bridge loan facility, and other general corporate purposes as set forth in a budget prepared by the Borrowers (the "DIP Budget"). The DIP Budget will be agreed to by Borrowers and Lender, and Prudential as a condition to its subordination to Lender's liens pursuant to the terms hereof. |

---

[1] Gebbers Orchards, Inc., Gebbers Farms Inc., C&M II, LLC, D&E Storage, LLC, Northco, LLC, P&G Orchards, LLC, Repo, LLC, TJF Properties, LLC, Westco Orchards, LLC, Westco Sales, Inc., and such other entities as agreed to.

1

305163555v3

| Funded Amount: | The DIP Loan shall be funded, up to a maximum amount of $72.0 million, as provided herein and on the below funding dates. |
|---|---|
| | • **Initial Draw, up to a funded amount of $20.0 million**. This amount will be immediately available for draw upon Bankruptcy Court approval and entry of the Interim DIP Order in form and substance acceptable to Lender. |
| | • **Maximum Additional Draws, up to a funded amount of $52.0 million**. The maximum additional draws will be up to a funded amount of $52.0 million in total, in accordance with duly executed and binding documentation to be executed and delivered by the parties (the "Definitive Documents"), upon Bankruptcy Court approval and entry of the Final DIP Order in form and substance acceptable to Lender. |
| Funding Dates: | • **Initial Draw, up to a funded amount of $20.0 million**. Available on the entry of the Interim DIP Order approving the DIP Loan on an interim basis (the "Initial Draw"). |
| | • **Additional Draws, up to a funded amount of an additional $52.0 million**. Upon Bankruptcy Court approval and entry of the Final DIP Order in form and substance acceptable to the Lender, an additional $52.0 million of the Total Commitment Amount will be immediately available for draw in accordance with the Definitive Documents. Additional draws will each be in a minimum funded amount of $5.0 million and subject to a 7-day advance notice (the "Additional Draws", which, when taken together with the Initial Draw, constitute the "Principal Amount"), provided that the aggregate funded amount of all Additional Draws may not exceed $52.0 million. |

2

305163555v3

| | |
|---|---|
| **Maturity:** | Lender will be entitled to immediate repayment of all outstanding obligations under the DIP Loan on the earliest of (collectively, the "Repayment Date"):<br><br>(a) the effective date of the plan of reorganization;<br><br>(b) closing on a sale of all or substantially all of the Borrowers' assets (unless otherwise agreed to by the parties); and<br><br>(c) 9 months from the date of origination ("Maturity Date"), subject to extensions as set forth below (for a total of up to 12 months from the date of origination).<br><br>Lender will consider converting some or all of the DIP Loan to an exit financing facility in conjunction with a sale or an emergence from chapter 11 (subject to terms agreeable to Lender and Lender's internal approvals). |
| **Amortization:** | None. |
| **Prepayment:** | The Borrower may prepay the DIP Loan in full or in part at any time (the date on which any such prepayment occurs, a "Prepayment Date"). There will be a mandatory repayment of the DIP Loan upon the sale of any assets with the net proceeds thereof (unless otherwise agreed to by the parties). |
| **Loan Interest Rates and Fees:** | The DIP Loan interest rates and fees will be as follows:<br>(i) Issuance Fee: The Borrowers will pay Lender an issuance fee of 2.0% of the amount of the Initial Draw and each Additional Draw, which fee will be earned and payable on the date of each draw (the issuance fee will be capitalized and added to the Principal Amount but not counted against draw limits).<br><br>(ii) Cash Interest: None.<br><br>(iii) PIK Interest: The Borrowers will pay the Lender PIK interest at 12.5% per annum on the outstanding Principal Amount, which shall be added to the Principal Amount on a monthly basis but not counted against draw limits for any of the draws contemplated herein. The Borrower may choose to pay any portion of this PIK interest in cash on a monthly basis.<br><br>(iv) Exit Fee: The Borrowers will pay the Lender an exit fee of 2.0% multiplied by the repaid Principal |

305163555v3

Amount. Such exit fees will be payable on the earlier to occur of any Prepayment Date and Repayment Date.

(v) <u>Default Interest Rate</u>: During the occurrence and continuance of an Event of Default, the PIK interest rate will increase by 3.0%.

(vi) <u>Renewal Fees</u>:  If the DIP Loan is not repaid in full on or before the Maturity Date, time being of the essence, the Borrowers will pay to the Lender, in addition to all other fees and other amounts as set forth in this Term Sheet, a renewal fee of 1.0% of the Total Commitment Amount as of the Repayment Date, which shall extend the Repayment Date by an additional 3 months (the renewal fee will be capitalized and added to the Principal Amount at the time of extension, but, if applicable, will not count against draw limits). Borrowers shall be entitled to no more than one (1) 3-month extension period at the Maturity Date.

(vii) <u>Unused Fee</u>: The Borrowers will pay the Lender an unused fee at 2.0% <u>per</u> <u>annum</u> on the undrawn outstanding Total Commitment Amount which shall be added to the Principal Amount on a monthly basis and will not count against draw limits for any of the draws contemplated herein.

(viii) <u>Minimum Multiple of Invested Capital.</u>  The Borrowers will pay the Lender a cash fee at exit such that the Lender's multiple of invested capital for each draw (the Initial Draws and each Additional Draw individually), exclusive of any fees, shall be no less than 1.125x.

| | |
|---|---|
| **Cash Flow Milestones:** | Cash flow milestones to be such that Borrowers are within 20% of their aggregate trailing rolling disbursements per agreed DIP Budget (as approved by the Lender). |
| **Collateral Security and Priority:** | Other than certain real estate collateral and immaterial personal property collateral secured by perfected, unavoidable pre-petition liens of third party lenders other than Prudential, which permitted liens shall be scheduled and approved by Lender in its reasonable discretion ("Permitted Liens"),[2] the collateral and priority for the DIP Loan (the "Collateral") will |

---

[2] Sandton to review and approve senior liens.  Borrowers to provide schedule and copies of non-Pru CRE lender docs.

| | include pursuant, to Bankruptcy Code sections 364(c)(1), 364(c)(2), 364(c)(3), and, subject to entry of the Final DIP Order, 364(d), a fully perfected first priority security interest in all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Borrowers including, without limitation, all cash and cash equivalents (including the Restricted Cash), bank deposit and securities accounts, accounts, securities, shares other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.<br><br>With respect to assets subject to Permitted Liens, Lender will receive 2nd or 3rd liens on such assets. |
|---|---|
| **Chapter 11 Milestones:** | The DIP Facility shall be subject to the following bankruptcy milestones:<br><br>i. No later than three (3) business days after the Petition Date (subject to the Bankruptcy Court's docket) the Bankruptcy Court shall enter the interim order approving the DIP Facility which shall be in form and substance acceptable to the DIP Lender;<br><br>ii. No later than thirty-five (35) calendar days after the Petition Date (subject to the Bankruptcy Court's docket), the Bankruptcy Court shall have entered the final DIP order approving the DIP Facility, which order shall be in form and substance acceptable to the DIP Lender;<br><br>iii. No later than fourteen (14) business days after the Petition Date, the Debtors shall have filed an appropriate motion with the Bankruptcy Court in form and substance satisfactory to the DIP Lender for entry of an order providing for bid procedures for the sale of the Debtors' assets that establishes a date that is no later than seventy five (75)days after the Petition Date as the |

|  | deadline for submission of binding bids with respect to the Debtors' assets, which motion shall also seek approval of a stalking horse bid, if available, no later than thirty five (35) prior to the bid deadline (the "<u>Bidding Procedures</u>"); |
|---|---|
|  | iv. No later than thirty five (35) days after the Petition Date, the Bankruptcy Court shall have entered one or more order(s) (which shall be in form and substance acceptable to the DIP Lender) approving the bidding procedures (the "<u>Bid Procedures Order</u>"); |
|  | v. Subject to the Bankruptcy Court's entry of the Bid Procedures Order, no later than eighty (80) days after the Petition Date, the Debtors shall have commenced an auction for all or substantially all of the Debtors assets, in accordance with the Bid Procedures Order; |
|  | vi. No later than eighty five (85) days after the Petition Date, the Bankruptcy Court shall have entered one or more sale order(s) approving each of the winning bid(s) from such sales; and |
|  | vii. Subject to the Bankruptcy Court's entry of an order approving the Debtors proposed Bidding Procedures, closing of the winning bid(s) shall have occurred no later than the date that is one hundred twenty (120) days after the Petition Date. |
| **Covenants:** | Affirmative, negative, and other financial and operational covenants customary for transactions of this type, including but not limited to:<br><br>• Effective upon the entry of the Final DIP Order, minimum cash balance in an amount to be mutually agreed (which may be funded from borrowed funds);<br>• Maximum capital expenditures;<br>• No dividends or any other upstream payments or distributions other than any such dividends, payments or distributions (i) by any subsidiary to any Borrower or (ii) payable solely in common stock or other equity interests that is not disqualified equity or (iii) payable to an affiliate for services provided in the ordinary course after prior review and approval of Lender;<br>• No change of control, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to sections 363 or 1129 of the Bankruptcy Code; |

305163555v3

| | |
|---|---|
| | • Maintenance of appropriate insurances and addition of Lender as additional insured, lender's loss payee and/or mortgage, as applicable, under such insurance policies;<br>• Limitations on additional debt, guarantees, and hedging arrangements, including the subordination of all intercompany indebtedness;<br>• Limitations on liens and further negative pledges;<br>• Limitations on sales, transfers, and other dispositions of assets other than as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to sections 363 or 1129 of the Bankruptcy Code;<br>• Limitations on loans and investments;<br>• Agreed upon milestones for the Borrowers' chapter 11 cases, including confirmation of a plan of reorganization; and<br>• Limitations on creating new subsidiaries or becoming a general partner in any partnership. |
| **Representations and Warranties:** | Usual and customary representations and warranties, including organization in good standing, validity of agreements, tax status, compliance with law, and operational and financial disclosures. |
| **Reporting:** | • Cash flow variance reporting provided weekly<br>• Updated DIP Budgets provided monthly<br>• Financial reporting generally provided by debtors in possession to their secured lenders in chapter 11 cases<br>• Any reporting provided to other parties in interest in the Borrowers' chapter 11 cases |
| **Customary Terms:** | Usual and customary non-monetary terms, including, without limitation, releases of claims and causes of action, acknowledgements, and findings.<br><br>For professional fees incurred pre-default, the liens securing the DIP obligations, the DIP obligations' status as "superpriority" claims, the "super-priority" claims and liens constituting adequate protection claims, and the liens securing the prepetition loan obligations shall be subject to a "carve-out" in favor of court approved professionals and the United States Trustee statutory fees in amounts consistent with the approved DIP Budget and approved by the Bankruptcy Court, following notice and a hearing. For fees incurred post default, the carve-out will be limited and capped in the amount of $250,000 in the aggregate for all court approved professionals. The carve out shall include such other customary terms for a |

305163555v3

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 85 of 155

| | transaction of this type (the "Carve-Out"). |
|---|---|
| **Events of Default:** | Events of Default will include, in addition to other such events customarily found in transactions similar to the DIP Loan:<br><br>• Payment defaults<br>• Covenant defaults<br>• Representation or warranty breaches<br><br>Among other remedies, upon the occurrence and continuance of an Event of Default, and subject to a remedies notice period (as described in the Interim DIP Order) and the terms of the Interim DIP Order, the Lender may accelerate all of the DIP Loan obligations and enforce its remedies against the Collateral. |
| **Expenses:** | The Borrowers will be responsible for all reasonable and documented out of pocket fees and expenses incurred by the Lender to perform due diligence and in connection with the negotiation, preparation, documentation and administration of the Definitive Documents, and court approval, regardless of whether the transactions contemplated in this Term Sheet or in the Definitive Documents are consummated. The Borrowers will be responsible for all out of pocket fees and expenses incurred by Lender to enforce the terms of the DIP Loan or otherwise to protect its rights under the Definitive Documents.<br><br>A deposit of $80,000 (the "Expense Deposit") shall be payable upon acceptance of this Term Sheet and used for transaction and diligence expenses. Any such reasonable and documented fees and expenses incurred by legal counsel to the Lender shall be paid timely in cash regardless of the DIP Budget. |
| **Contingencies:** | Lender has received the Expense Deposit, completed its due diligence (which must be satisfactory to Lender in its sole discretion), the parties have executed Definitive Documents (which, for purposes of the Initial Draw, may solely be this Term Sheet), the entry of the Interim DIP Order and the entry of the Final DIP Order consistent with the terms set forth herein. |
| **Governing Law, Waiver of Jury Trial, Jurisdiction:** | In connection with the transaction outlined in this Term Sheet, all parties agree: (i) that the law of the State of New |

8

305163555v3

| | |
|---|---|
| | York governs without regard to any conflict of law principals; (ii) to the waiver of a trial by jury; and (iii) to the exclusive jurisdiction of the Bankruptcy Court, and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the jurisdiction of the state and federal courts located in the Eastern District of Washington. The Definitive Documents will be governed by New York law. |
| **Exclusivity:** | Borrowers agree to negotiate exclusively with Lender with respect to DIP financing and will not take any action, directly or indirectly, to encourage, initiate or, subject to the last sentence under this heading, engage in discussions with any other party concerning any DIP financing. Borrowers will neither solicit nor, subject to the last sentence of this heading, accept any competing bids concerning any DIP financing from any other party during the tenure of this Term Sheet. Notwithstanding the foregoing, to the extent any party approaches the Borrowers with a financing or other potential transaction that is more favorable to the Borrower than the terms described in this Term Sheet, the Borrowers shall be permitted to engage in discussions with such party.<br><br>For the avoidance of doubt, the Borrowers are free to explore and negotiate either (i) a sale transaction (either in or out of court) or (ii) a financing transaction solely for the purpose of financing the Borrowers' operations outside of and in lieu of a Chapter 11 filing. |
| **Confidentiality:** | Prior to the Borrowers' commencement of a case under chapter 11 of the Bankruptcy Code, Borrowers shall not disclose to any person or entity the terms or conditions of this term sheet or any information about the transaction, including, without limitation, the existence, status, nature, terms or conditions of the discussions or actions by the parties relating to the potential transaction except Borrowers may disclose such matters (i) to their affiliates and their and their affiliates' employees, members, managers, administrators, directors, officers, partners, advisors and other agents who need to know such matters for the sole purpose of permitting Borrowers to evaluate or consummate the potential transaction, (ii) and to Borrowers' existing secured mortgage and operating lenders, (iii) as explicitly approved in advance in writing by Lender or (iv) to the extent, in the reasonable judgment of Borrowers, required by any applicable law or order, in which case Borrowers shall use commercially reasonable efforts to allow Lender reasonable time to |

305163555v3

| | comment on such disclosure in advance thereof. |
|---|---|
| **Definitive Documents:** | Other than the Initial Draw that may be documented solely by this Term Sheet, the DIP Loan will be documented by, among other things, a promissory note, security agreement, credit agreement, and mortgage(s), all of which will be in form and substance accept to Lender and subject to Bankruptcy Court approval. |

[Signature page follows]

305163555v3

Docusign Envelope ID: 5AC1C6D4-4BB7-8A67-8181-E10D7AC08660

# TERM SHEET

**Brewster Heights Packing and Orchards, LP and Each of its Affiliates Companies**

Agreed and accepted this May 11, 2026

Sincerely,

LENDER:
**Sandton Capital Solutions Master Fund VI, LP**

By: *Robert Rice*
Name: Robert Rice
Title: Authorized Person

BORROWERS:
**Brewster Heights Packing and Orchards, LP**,
a Washington limited partnership

By: Gebbers Orchards, Inc., a Washington
corporation, its sole General Partner

By: *Daniel Gebbers*
Name: Daniel Gebbers
Title:   its Interim President and CEO

*[JOINDER OF ADDITIONAL BORROWERS TO BE ATTACHED]*

Signature Page to DIP Loan Term Sheet

# EXHIBIT C

<span style="color:red">**Draft Subject to Material Change**</span>

<span style="color:blue">**BHPO - Interim DIP Budget**</span>

*($ in 000s)*

| | Week # | Est.<br>Stub Wk | Est.<br>1 | Est.<br>2 | Est.<br>3 | Est.<br>4 | 4 Weeks |
|---|---|---|---|---|---|---|---|
| | Week Ending | **6/4-6/6** | **6/13/26** | **6/20/26** | **6/27/26** | **7/4/26** | **6/4-7/4** |
| **OPERATING CASH FLOW** | | | | | | | |
| **Operating Receipts** | | | | | | | |
| CFM Receipts | | $- | $400 | $300 | $1,400 | $1,169 | $3,269 |
| Processor & Outside WH Receipts | | - | - | - | 1,313 | - | 1,313 |
| Apple House Paid WH Expenses | | - | 795 | - | 795 | 428 | 2,018 |
| **Cash Receipts from Operations** | | **$-** | **$1,195** | **$300** | **$3,508** | **$1,597** | **$6,599** |
| **Operating Disbursements** | | | | | | | |
| Orchard Payroll | | $- | $1,751 | $- | $2,551 | $- | $4,301 |
| Warehouse Payroll | | - | 1,272 | - | 2,072 | - | 3,345 |
| Salaried Payroll | | - | - | 300 | 71 | 300 | 671 |
| Orchard AP Paid | | - | 711 | 711 | 1,422 | 1,422 | 4,265 |
| Warehouse AP Paid | | - | 461 | 461 | 922 | 1,350 | 3,193 |
| **Cash Disbursements from Operations** | | **$-** | **$4,195** | **$1,472** | **$7,038** | **$3,072** | **$15,775** |
| **Net Operating Cash Flow** | | **$-** | **($3,000)** | **($1,172)** | **($3,530)** | **($1,474)** | **($9,176)** |
| **NON-OPERATING CASH FLOWS** | | | | | | | |
| **Chapter 11 Related Cash Flows** | | | | | | | |
| Chapter 11 Professional Fees | | $- | $- | $- | $- | $- | $- |
| US Trustee Fees | | - | - | - | - | - | - |
| Independent Director Fees | | - | 60 | - | - | 60 | 120 |
| First Day Motion Payments (Primarily CV) | | - | 875 | 875 | 875 | 875 | 3,500 |
| Buyer Diligence | | - | - | 100 | 100 | 100 | 300 |
| Utility Deposits | | - | 250 | - | - | - | 250 |
| **Total Chapter 11 Related Cash Flows** | | **$-** | **$1,185** | **$975** | **$975** | **$1,035** | **$4,170** |
| **Financing Costs** | | | | | | | |
| Lender Professional Fees | | $- | $- | $- | $- | $- | $- |
| BMO 2025 Crop Collections | | - | 400 | 300 | 1,313 | - | 2,013 |
| DIP Lender Fees & Debt Service | | - | - | - | - | - | - |
| Other Debt Service | | - | - | - | - | - | - |
| **Total Financing Costs** | | **$-** | **$400** | **$300** | **$1,313** | **$-** | **$2,013** |
| **Total Net Cash Flow before Financing** | | **$-** | **($4,585)** | **($2,447)** | **($5,818)** | **($2,509)** | **($15,359)** |
| **LIQUIDITY** | | | | | | | |
| Beginning Cash Balance | | $708 | $708 | $21,123 | $18,676 | $12,858 | $708 |
| Total Net Cash Flow before Financing | | - | (4,585) | (2,447) | (5,818) | (2,509) | (15,359) |
| DIP Facility Draw / (Repayment) | | - | 25,000 | - | - | - | 25,000 |
| **Ending Cash Balance** | | **$708** | **$21,123** | **$18,676** | **$12,858** | **$10,349** | **$10,349** |
| **DIP Facility Balance** | | | | | | | |
| Beginning Balance | | $- | $- | $25,000 | $25,000 | $25,000 | $- |
| Draw / (Repayment) | | - | 25,000 | - | - | - | 25,000 |
| **Ending Balance** | | **$-** | **$25,000** | **$25,000** | **$25,000** | **$25,000** | **$25,000** |

**Confidential**    6/4/2026    Page 1

# EXHIBIT D

**Draft Subject to Material Change**

**BHPO - DIP Budget**

*($ in 000s)*

| | Est. Stub Wk 6/4-6/6 | Est. 1 6/13/26 | Est. 2 6/20/26 | Est. 3 6/27/26 | Est. 4 7/4/26 | Est. 5 7/11/26 | Est. 6 7/18/26 | Est. 7 7/25/26 | Est. 8 8/1/26 | Est. 9 8/8/26 | Est. 10 8/15/26 | Est. 11 8/22/26 | Est. 12 8/29/26 | Est. 13 9/5/26 | Est. 14 9/12/26 | Est. 15 9/19/26 | Est. 16 9/26/26 | Est. 17 10/3/26 | 17 Weeks 6/4-10/3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPERATING CASH FLOW** | | | | | | | | | | | | | | | | | | | |
| **Operating Receipts** | | | | | | | | | | | | | | | | | | | |
| CFM Receipts | $- | $400 | $300 | $1,400 | $1,169 | $1,169 | $1,169 | $2,169 | $1,169 | $4,091 | $2,091 | $2,091 | $2,091 | $2,573 | $2,573 | $2,573 | $2,573 | $2,573 | $32,172 |
| Processor & Outside WH Receipts | - | - | - | 1,313 | - | - | - | - | 5,026 | - | - | - | - | 5,026 | 3 | 3 | 3 | 5,029 | 16,407 |
| Custom Packing Receipts | - | - | - | - | - | - | 3,932 | - | - | - | 3,539 | - | - | - | - | 393 | - | - | 7,865 |
| Apple House Paid WH Expenses | - | 795 | - | 795 | 428 | 1,209 | 428 | 1,209 | 428 | 1,415 | 491 | 1,415 | 491 | 924 | 533 | 924 | 533 | 924 | 12,941 |
| Other Receivables | - | - | - | - | - | 605 | - | - | - | - | - | - | - | - | - | - | - | - | 605 |
| **Cash Receipts from Operations** | $- | $1,195 | $300 | $3,508 | $1,597 | $2,378 | $6,135 | $3,378 | $6,623 | $5,506 | $6,121 | $3,506 | $7,608 | $3,499 | $3,109 | $3,893 | $8,135 | $3,499 | $69,989 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Orchard Payroll | $- | $1,751 | $- | $2,551 | $- | $3,661 | $- | $3,661 | $- | $3,744 | $- | $3,344 | $- | $2,641 | $- | $2,641 | $- | $2,641 | $26,634 |
| Warehouse Payroll | - | 1,272 | - | 2,072 | - | 2,278 | - | 2,278 | - | 1,293 | - | 993 | - | 503 | - | 503 | - | 503 | 11,696 |
| Salaried Payroll | - | - | 300 | 71 | 300 | - | 300 | 71 | 300 | - | 300 | 71 | - | 300 | - | 300 | 71 | 300 | 2,685 |
| Orchard AP Paid | - | 711 | 711 | 1,422 | 1,422 | 832 | 416 | 416 | 832 | 832 | 832 | 976 | 976 | 1,953 | 1,953 | 1,953 | 264 | 264 | 16,763 |
| Warehouse AP Paid | - | 461 | 461 | 922 | 1,350 | 1,473 | 951 | 951 | 1,187 | 1,536 | 1,536 | 709 | 709 | 969 | 969 | 969 | 833 | 833 | 16,817 |
| H2A Payment - Orchard | - | - | - | - | - | 1,317 | - | - | - | - | - | - | - | - | - | - | - | - | 1,317 |
| Payroll Liabilities - Orchard | - | - | - | - | - | - | - | - | 725 | - | - | - | - | - | - | - | - | - | 725 |
| Payroll Liabilities - Warehouse | - | - | - | - | - | - | - | - | 475 | - | - | - | - | - | - | - | - | - | 475 |
| **Cash Disbursements from Operations** | $- | $4,195 | $1,472 | $7,038 | $3,072 | $9,561 | $1,666 | $7,377 | $3,518 | $7,404 | $2,667 | $6,094 | $1,686 | $6,366 | $2,922 | $6,366 | $1,168 | $4,541 | $77,112 |
| **Net Operating Cash Flow** | $- | ($3,000) | ($1,172) | ($3,530) | ($1,474) | ($7,183) | $4,468 | ($3,999) | $3,105 | ($1,898) | $3,454 | ($2,588) | $5,923 | ($2,867) | $187 | ($2,473) | $6,967 | ($1,042) | ($7,123) |
| **NON-OPERATING CASH FLOWS** | | | | | | | | | | | | | | | | | | | |
| **Chapter 11 Related Cash Flows** | | | | | | | | | | | | | | | | | | | |
| Chapter 11 Professional Fees | $- | $- | $- | $- | $- | $- | $2,900 | $- | $- | $- | $- | $2,755 | $- | $- | $- | $1,910 | $- | $980 | $8,545 |
| US Trustee Fees | - | - | - | - | - | - | - | - | 253 | - | - | - | - | - | - | - | - | 343 | 596 |
| Independent Director Fees | - | 60 | - | - | 60 | - | - | - | 60 | - | - | - | - | 60 | - | - | - | 60 | 300 |
| First Day Motion Payments (Primarily CV) | - | 875 | 875 | 875 | 875 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3,500 |
| Buyer Diligence | - | - | 100 | 100 | 100 | 100 | 100 | - | - | - | - | - | - | - | - | - | - | - | 500 |
| Utility Deposits | - | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 250 |
| **Total Chapter 11 Related Cash Flows** | $- | $1,185 | $975 | $975 | $1,035 | $100 | $3,000 | $- | $313 | $- | $- | $2,755 | $- | $60 | $- | $1,910 | $- | $1,383 | $13,691 |
| **Financing Costs** | | | | | | | | | | | | | | | | | | | |
| Lender Professional Fees | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- |
| BMO 2025 Crop Collections | - | 400 | 300 | 1,313 | - | - | - | - | 5,026 | - | - | - | 5,026 | - | - | - | 5,026 | - | 17,092 |
| Backstop Ag Loan Debt Service | - | - | - | - | - | 8,327 | - | - | - | - | - | - | - | - | - | - | - | - | 8,327 |
| DIP Lender Fees & Debt Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Debt Service | - | - | - | - | - | 11 | 100 | 11 | - | - | - | 11 | - | - | - | - | 11 | - | 142 |
| **Total Financing Costs** | $- | $400 | $300 | $1,313 | $- | $8,338 | $100 | $11 | $5,026 | $- | $- | $11 | $5,026 | $- | $- | $- | $5,037 | $- | $25,561 |
| **Total Net Cash Flow before Financing** | $- | ($4,585) | ($2,447) | ($5,818) | ($2,509) | ($15,621) | $1,368 | ($4,010) | ($2,234) | ($1,898) | $3,454 | ($5,353) | $896 | ($2,927) | $187 | ($4,383) | $1,930 | ($2,424) | ($46,375) |
| **LIQUIDITY** | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | $708 | $708 | $21,123 | $18,676 | $12,858 | $10,349 | $4,728 | $6,096 | $2,086 | $9,852 | $7,954 | $11,407 | $6,054 | $6,950 | $4,024 | $4,210 | $500 | $2,430 | $708 |
| Total Net Cash Flow before Financing | - | (4,585) | (2,447) | (5,818) | (2,509) | (15,621) | 1,368 | (4,010) | (2,234) | (1,898) | 3,454 | (5,353) | 896 | (2,927) | 187 | (4,383) | 1,930 | (2,424) | (46,375) |
| DIP Facility Draw / (Repayment) | - | 25,000 | - | - | - | 10,000 | - | - | 10,000 | - | - | - | - | - | - | 673 | - | - | 45,673 |
| **Ending Cash Balance** | $708 | $21,123 | $18,676 | $12,858 | $10,349 | $4,728 | $6,096 | $2,086 | $9,852 | $7,954 | $11,407 | $6,054 | $6,950 | $4,024 | $4,210 | $500 | $2,430 | $6 | $6 |
| **DIP Facility Balance** | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | $- | $- | $25,000 | $25,000 | $25,000 | $25,000 | $35,000 | $35,000 | $35,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,673 | $45,673 | $- |
| Draw / (Repayment) | - | 25,000 | - | - | - | 10,000 | - | - | 10,000 | - | - | - | - | - | - | 673 | - | 7,854 | 53,527 |
| **Ending Balance** | $- | $25,000 | $25,000 | $25,000 | $25,000 | $35,000 | $35,000 | $35,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,000 | $45,673 | $45,673 | $53,527 | $53,527 |

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 93 of 155

6/4/2026



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| In re | Chapter 11 |
|---|---|
| BREWSTER HEIGHTS PACKING & ORCHARDS, LP,[1] | Lead Case No. 26-01136 |
| Debtors. | Jointly Administered |
| | [PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING |

Upon the motion dated June 5, 2026 (the "Motion") of Brewster Heights Packing and Orchards, LP and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking,

[1] The debtors are Brewster Heights Packing & Orchards, LP (Case No. 26-01136); Gebbers Farms Inc. (Case No. 26-01140); Gebbers Orchards, Inc. (Case No. 26-01141); C&M II, LLC (Case No. 26-01137); D&E Storage, LLC (Case No. 26-01138); Eastco, LLC (Case No. 26-01139); GF SA, LLC (Case No. 26-01142); Northco, LLC (Case No. 26-01143); P&G Orchards, LLC (Case No. 26-01144); REPO, LLC (Case No. 26-01145); TJF Properties, LLC (Case No. 26-01146); Westco Orchards, LLC (Case No. 26-01147); and Westco Sales, Inc. (Case No. 26-01148).

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules (the "Local Rules" or "LBR"), entry of an interim order (this "Interim Order") authorizing the Debtors to enter into a senior secured, superpriority debtor-in-possession financing facility with Sandton Capital Solutions Master Fund VI, LP in the aggregate principal amount on an interim basis of not more than $20 million; the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the *Declaration of Brooke McGuire in Support of the Debtors' Bankruptcy Petition and First Day Pleadings* (the "McGuire Declaration"); and the Court having held a hearing on June [9], 2026, to consider entry of this Interim Order (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and in the McGuire Declaration, and at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, and all other parties in interest;

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 95 of 155

and the Court having determined that the relief requested in the Motion is essential for the continued operation of the Debtors' businesses and to prevent immediate and irreparable harm to the Debtors' estates; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A. **Petition Date**. On June 4, 2026 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Washington (the "Court") commencing the Chapter 11 Cases. The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner, or official statutory committee of unsecured creditors (such official committee, the "Committee") has yet been appointed in the Chapter 11 Cases.

B. **Jurisdiction and Venue**. The Court has jurisdiction over these Chapter 11 Cases and related proceedings, pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and related proceedings on the Motion is proper in this district

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Bankruptcy Rule 7008, the Debtors consent to the entry of final orders by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

C. **Notice**. Under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing, and the Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion, the Interim Hearing, or this Interim Order shall be required.

D. **No Control**. Sandton Capital Solutions Master Fund VI, LP and/or one or more of its affiliated funds or accounts (individually and collectively, "DIP Lender") was not and is not in control of persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility.[3]

E. **Immediate Need for Postpetition Financing**. Good cause has been shown for entry of this Interim Order. The immediate ability of the Debtors to preserve and maintain the value of their assets requires the availability of working capital from the DIP Facility to continue operations, pay the costs and expenses of administering the Chapter 11 Cases, and administer and preserve the value of their businesses and estates. In the absence of the continued availability of such funds and liquidity in accordance

---

[3] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

with the terms hereof (including access to the DIP Facility), the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors, their estates, their creditors and their crop would occur. Further, the possibility for a successful restructuring and other value-maximizing transaction(s) would be jeopardized in the absence of the availability of funds in accordance with the terms of this Interim Order.

F. **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain credit on more favorable terms and conditions than those provided in this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claims and without granting the adequate protection as and to the extent set forth herein.

G. **Debtors' Stipulations Regarding Prudential Secured Parties**. Subject only to the limitations contained in Paragraph 8 of this Interim Order, and after consultation with their attorneys and financial advisors, and in exchange for and as a material inducement to The Prudential Insurance Company of America's agreement to entry of this Interim Order, including the subordination of the Prudential Prepetition Liens to the Carve Out and the DIP Liens to the extent set forth herein, the Debtors admit, stipulate, acknowledge, and agree as follows:

i. *Prudential Prepetition Loan Documents*. Prior to the Petition Date, The Prudential Insurance Company of America ("Prudential") made certain loans and other financial accommodations to the Debtors or certain of them pursuant to that certain Loan Agreement dated as of May 28, 2020, by and among Prudential and the borrowers party thereto, as amended, supplemented, restated, or otherwise modified from time to time, together with the notes, mortgages, deeds of trust, security agreements, assignments of leases, rents and proceeds, crop filings, fixture filings,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 98 of 155

guarantees, forbearance agreements, modification agreements, and all other documents and instruments evidencing, securing, governing, or otherwise relating to such loans and other financial accommodations, each as amended, supplemented, restated, or otherwise modified from time to time prior to the Petition Date (collectively, the "Prudential Prepetition Loan Documents"). Prudential, together with any other holder, agent, servicer, or representative with respect to the Prudential Prepetition Obligations, is referred to herein collectively as the "Prudential Secured Parties".

ii.     *Prudential Prepetition Obligations*. Pursuant to the Prudential Prepetition Loan Documents, the Debtors are justly and lawfully indebted and liable to the Prudential Secured Parties, without defense, challenge, objection, claim, counterclaim, recoupment, or offset of any kind, in the aggregate amount as of the Petition Date of not less than $162,340,000, plus accrued and unpaid interest, default interest, fees, expenses, attorneys' fees, indemnities, charges, premiums, costs, and all other amounts chargeable or otherwise payable under the Prudential Prepetition Loan Documents, arising before the Petition Date, in each case as and to the extent provided in the Prudential Prepetition Loan Documents (collectively, the "Prudential Prepetition Obligations").

iii.     *Prudential Prepetition Liens and Prudential Prepetition Collateral*. As more fully set forth in the Prudential Prepetition Loan Documents, prior to the Petition Date, the Debtors or certain of them granted to Prudential, for itself and/or for the benefit of the Prudential Secured Parties, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the collateral described in the Prudential Prepetition Loan Documents, together with all proceeds, products, offspring, rents, issues, and profits thereof, whether arising before or after the Petition Date (collectively, the "Prudential Prepetition Collateral" and such liens and security interests, collectively, the "Prudential Prepetition Liens").

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

iv. *Validity, Perfection, and Priority*. The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prudential Prepetition Liens were valid, binding, enforceable, non-avoidable, and properly perfected, and were granted for fair consideration and reasonably equivalent value; (b) the Prudential Prepetition Liens were senior in priority over any and all other liens on the Prudential Prepetition Collateral, subject only to the Carve Out, the DIP Liens, the Permitted Senior Liens (defined *infra*), and any other liens that were valid, perfected, non-avoidable, and senior in priority to the Prudential Prepetition Liens as of the Petition Date; (c) the Prudential Prepetition Obligations constitute legal, valid, binding, enforceable, and non-avoidable obligations of the Debtors; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature exist with respect to any of the Prudential Prepetition Obligations, the Prudential Prepetition Liens, or the Prudential Prepetition Collateral; and (e) no portion of the Prudential Prepetition Obligations or the Prudential Prepetition Liens is subject to avoidance, disallowance, disgorgement, recharacterization, subordination, reduction, setoff, recoupment, impairment, or any other challenge under the Bankruptcy Code or applicable non-bankruptcy law.

v. *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to any Prudential Secured Parties (in their capacity as such) under any agreements by and among the Debtors and such Prepetition Secured Parties.

vi. *Release*. Effective as of the entry of this Interim Order, each of the Debtors and, subject to Paragraph 8 of this Interim Order, each of the Debtors' estates, on behalf of itself and its predecessors, successors, assigns, subsidiaries, affiliates, officers, directors, managers, partners, members, shareholders, employees, agents, attorneys, advisors, and representatives, hereby absolutely, unconditionally, and irrevocably releases, acquits, and forever discharges each of the Prudential Secured

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 100 of 155

Parties, and each of their respective current and former affiliates, agents, representatives, servicers, officers, directors, managers, members, partners, employees, attorneys, financial advisors, consultants, professionals, successors, and assigns, each in its respective capacity as such (collectively, the "Prudential Released Parties"), from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions, causes of action, and obligations of any kind or nature, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, arising at any time on or before the date of entry of this Interim Order and relating in any way to the Prudential Prepetition Loan Documents, the Prudential Prepetition Obligations, the Prudential Prepetition Liens, the Prudential Prepetition Collateral, or the prepetition relationship, conduct, transactions, negotiations, forbearances, modifications, administration, enforcement, or exercise of rights and remedies between or among the Debtors and any of the Prudential Released Parties; provided, however, that the foregoing release shall not release any claim or liability that a court of competent jurisdiction determines by final, non-appealable order resulted from the bad faith, fraud, gross negligence, or willful misconduct of such Prudential Released Party.

vii. *No Control.* None of the Prudential Secured Parties or Prudential Released Parties, by virtue of any action taken with respect to, in connection with, related to, or arising from the Prudential Prepetition Loan Documents, the Prudential Prepetition Obligations, the Prudential Prepetition Liens, the Prudential Prepetition Collateral, or the negotiation or implementation of this Interim Order, controls or has controlled the Debtors or their properties or operations, has authority to determine the manner in which any Debtor's operations are conducted, or is a control person or insider of any Debtor.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 8

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### H. Stipulations and Adequate Protection for BMO Bank, N.A.

Subject only to the limitations contained in Paragraph 8 of this Interim Order, and after consultation with their attorneys and financial advisors, and in exchange for and as a material inducement to BMO Bank, N.A.'s ("BMO") agreement to entry of this Interim Order, the Debtors admit, stipulate, acknowledge, and agree as follows:

i.    Prior to the Petition Date, (i) certain Debtors and affiliated entities ("BMO Obligors") entered into that certain Loan and Security Agreement dated as of June 10, 2021 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO Syndicated Loan Agreement") and related loan documents (collectively, the "BMO Syndicated Loan Documents"), pursuant to which BMO and BMO Syndicated Lenders extended loans and other credit accommodations (the "BMO Syndicate Financing"), and (ii) BHPO entered into that certain Loan and Security Agreement dated as of August 29, 2022 (as amended, restated, supplemented, or otherwise modified from time to time, the "BMO RE Loan Agreement" and collectively with the BMO Syndicated Loan Agreement, the "BMO Loan Agreements") and related loan documents (collectively, the "BMO RE Loan Documents" and collectively with the BMO Syndicated Loan Documents, the "BMO Loan Documents"), pursuant to which BMO RE Lender extended loans and other credit accommodations (the "BMO RE Financing" and collectively with the BMO Syndicate Financing, the "BMO Financing").

ii.    <u>Prepetition Obligations</u>. As of the Petition Date, (i) BMO Obligors are indebted to the BMO Syndicated Lenders on account of the BMO Syndicate Financing in an amount not less than $56,456,440.61, plus additional accrued and

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 102 of 155

unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the BMO Syndicated Loan Documents (collectively, the "BMO Prepetition Syndicate Obligations") and (ii) BHPO is obligated to BMO RE Lender on account of the BMO RE Financing in an amount not less than $6,569,000.08, plus additional accrued and unpaid interest, fees, costs, expenses, protective advances, indemnification obligations, and other amounts due under the BMO RE Loan Documents (collectively, the "BMO Prepetition RE Obligations" and collectively with the BMO Prepetition Syndicate Obligations, the "BMO Prepetition Obligations"). Debtors stipulate that BMO Prepetition Obligations (a) constitute actual, legal, valid, binding, and enforceable obligations of BMO Obligors, (b) are not subject to any objection, offset, recoupment, defense, avoidance, subordination, counterclaim, disallowance, impairment, recharacterization, or other claim, cause of action, or challenge of any kind or nature, whether under the Bankruptcy Code or similar law, under non-bankruptcy law, or otherwise, and (c) are not subject to any claim of recharacterization, subordination, avoidance, or other claims of any kind or nature, except for any subordination governing BMO Permitted Senior Liens (as defined below) and this Interim Order, including, without limitation, claims arising under or pursuant to Bankruptcy Code §§ 105, 510, or 542 through 553, 724 or 726.

iii. <u>BMO Prepetition Liens and Collateral</u>. Pursuant to the BMO Loan Documents, but subject to multiple intercreditor, lien priority and subordination agreements by and between BMO and Prudential, BMO Secured Parties hold valid, perfected, and non-avoidable liens and security interests (the "BMO Prepetition Liens") in and to substantially all personal property assets of BMO Obligors, including, without

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

limitation, all accounts, chattel paper, instruments, inventory, equipment, deposit accounts, investment property, general intangibles, and certain real estate, and the proceeds, products, rents, and profits, and all proceeds thereof, excluding the crops now growing or hereafter grown, planted or produced, and all accounts, cash, payment intangibles, rights and other products and proceeds of the crops grown during the period beginning November 1, 2025 and ending October 31, 2026 ("Excluded 2026 Crop") (collectively, with the exception of the Excluded 2026 Crop, the "BMO Prepetition Collateral"), subject only to liens validly existing and perfected as of the Petition Date that were senior in priority to the BMO Prepetition Liens (by agreement or otherwise) and remain unavoided (the "BMO Permitted Senior Liens"). Debtors stipulate that BMO Prepetition Liens (a) constitute actual, legal, valid, enforceable, duly perfected, and non-avoidable security interests and liens in and upon the BMO Prepetition Collateral senior in priority to all other prepetition liens, security interests, interests, and claims, subject only to BMO Permitted Senior Liens, and (b) are not subject to any objection, defense, offset, avoidance, subordination, or other claim, cause of action, or challenge of any kind or nature, whether under the Bankruptcy Code or similar law, under non-bankruptcy law, or otherwise.

        iv.      Debtors are not authorized to use, and shall not directly or indirectly use, collect, transfer, dissipate, or encumber, or seek approval or authority to use, collect, transfer, dissipate, or encumber cash collateral arising from BMO Prepetition Collateral (the "BMO Cash Collateral") absent BMO's prior written consent or Order of this Court.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

v.　　As partial adequate protection, Debtors shall cause to be paid to BMO, for application to the BMO Prepetition Obligations in BMO's sole discretion, payments (the "BMO Inventory AP Payments") to be delivered to BMO, equal to the amount of the net proceeds (gross receipts less customary, documented third-party sales/commission charges actually incurred and paid to non-insiders in the ordinary course and approved by BMO) generated from the packing and sale of Debtors' produce inventory existing as of the Petition Date or otherwise constituting BMO Collateral (the "BMO Inventory Collateral"), wherever located, whether received or realized by any Debtor or received or held by third-party sales agents/brokers, which parties (including, without limitation, Apple House, AltaFresh d/b/a Chelan Fresh and any other applicable grower counter parties) are directed to continue remitting such net proceeds directly to BMO, including to the BMO cash collateral account immediately upon disbursement; and for the avoidance if doubt, all such amounts shall constitute BMO Inventory AP Payments and shall be automatically applied by BMO upon receipt without the need for weekly reconciliation or further authorization.

vi.　　<u>Assumption of Executory Contracts Relating to BMO Inventory Collateral</u>. On or before July 2, 2026, BHPO shall obtain an Order authorizing the assumption pursuant to section 365 of the Bankruptcy Code of (a) that certain Grower Contract, dated as of February 11, 2026 (as amended, restated, supplemented, or otherwise modified from time to time, the "Apple House Packing Agreement"), provided, however, that any applicable cure payment due under 11 U.S.C. § 365 shall be paid using BMO Cash Collateral.  BHPO is authorized to perform and shall timely perform pursuant to the terms of the Apple House Packing Agreement.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 12

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11　　Doc 29　　Filed 06/05/26　　Entered 06/05/26 17:07:01　　Pg 105 of 155

vii. **BMO Replacement Liens**. Effective as of the Petition Date, pursuant to Bankruptcy Code §§ 361 and 363(e), Debtors are hereby deemed to have granted to BMO, for the benefit of BMO Secured Parties, valid, binding, continuing, automatically perfected replacement liens (the "BMO Replacement Liens") on (a) all postpetition assets of Debtors and their estates of the same type and kind as the BMO Prepetition Collateral (the "BMO Postpetition Collateral" and collectively with the BMO Prepetition Collateral, the "BMO Collateral"), and (b) all proceeds, products, offspring, rents, issues, profits, and other proceeds of the BMO Prepetition Collateral and the BMO Postpetition Collateral, including, without limitation, the BMO Segregated DIP Account (defined herein), in each case to the extent of any diminution in value of the BMO Prepetition Liens occurring during the Cases (the "Diminution"). The BMO Replacement Liens shall attach automatically to all such property, whenever acquired and wherever located, without further act, and shall be deemed perfected for all purposes upon entry of this Interim Order, without further act, and enforceable against all parties in interest. Without limiting the foregoing, BMO, in its discretion, may file financing statements, amendments, continuations, notices, mortgages, and other instruments or documents, and may to cause the filing and recordation of this Interim Order or any document evidencing the BMO Replacement Liens with any recording or filing office or agency, in each case without further order of the Court.

viii. **Priority of BMO Replacement Liens**. The BMO Replacement Liens shall be (i) _senior_ to all liens, claims, and interests in the BMO Senior Collateral, and (ii) junior to the BMO Permitted Senior Liens, if any, and the DIP Liens on collateral other than the BMO Senior Collateral, and (iii) of equal priority to the BMO Prepetition

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Liens to the extent the BMO Prepetition Liens continue in proceeds under Bankruptcy Code § 552(b) and applicable nonbankruptcy law except the (x) BMO Permitted Senior Liens, if any, and (y) the DIP Liens on collateral other than the BMO Senior Collateral. Nothing herein authorizes the priming (whether of senior or pari passu priority) of the BMO Prepetition Liens on BMO Senior Collateral, or the BMO Replacement Liens, including, without limitation, liens, interests, and claims, if any, granted pursuant to the DIP Liens on such BMO Senior Collateral. Subject to the foregoing, BMO consents to the priming of any liens on BMO Collateral other than the BMO Senior Collateral. For the avoidance of doubt, and other than with respect to BMO Collateral other than the BMO Senior Collateral, any order authorizing or approving DIP financing or the use of cash collateral (of any other secured party and not BMO Secured Parties) entered in these Cases shall be expressly subordinate to BMO's liens on the BMO Senior Collateral and the BMO Replacement Liens in BMO Senior Collateral and all other protections granted to BMO Secured Parties pursuant to this Interim Order unless BMO otherwise consents in writing.

ix. <u>Budget, Reporting, and Access</u>. (a) Debtors shall deliver to BMO all interim, final and subsequently modified DIP Budgets and copies of all other reports required to be delivered to other parties in the Cases at such dates that such reports are required to be <u>delivered</u> to such parties. Beginning on and after June 17, 2026, the Debtors shall also, on a weekly basis separately identify all collections, remittances, expenses, commissions, returns, credits, and other activity relating to the BMO Inventory Collateral and all balances in the BMO Segregated DIP Account. (b) Debtors shall provide BMO reasonable access during normal business hours, upon reasonable

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

notice, to inspect the BMO Collateral and to review and copy books and records relating to the BMO Collateral, and shall cooperate with reasonable field exams or audits by BMO and its professionals. (c) In addition, Debtors shall promptly furnish such additional information regarding the BMO Collateral, operations, or liquidity as BMO may reasonably request.

x. <u>Segregated DIP Deposit Account for BMO Inventory Collateral Proceeds</u>. To the extent Debtors are able to cause proceeds of BMO Inventory Collateral to be (i) <u>remitted</u> directly by third parties to BMO or (ii) deposited directly to the BMO cash collateral account, no segregated account shall be required for such proceeds. No other authorization or consent is needed for those parties to remit those payments. Upon the request of BMO, for any other funds that are proceeds of BMO Senior Collateral, Debtors shall establish a "BMO Segregated DIP Account" at an institution acceptable to BMO no later than five (5) business days after entry of the Order approving BMO's stipulation with Debtors, and without limiting the automatic attachment and perfection of the BMO Replacement Liens in and to the BMO Segregated DIP Account, shall execute and deliver, and shall cause the applicable depository bank to execute and deliver, a deposit account control agreement in form and substance acceptable to BMO. Such amounts deposited into the BMO Segregated DIP Account (which shall be encumbered by the BMO Replacement Liens), shall be remitted to BMO immediately upon receipt as BMO AP Payments and, pending remittance, shall not be used for any purpose whatsoever.

xi. <u>BMO Superpriority Claim</u>. If the adequate protection provided in this Interim Order <u>proves</u> insufficient to protect against Diminution, then BMO shall

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code §§ 503(b) and 507(b) (the "BMO Superpriority Claim") in an amount equal to such insufficiency, which BMO Superpriority Claim shall be expressly subordinate to any superpriority claim granted to the DIP Lender, and pari passu in priority with any superpriority claim granted to Prudential, but otherwise have priority over all administrative expenses and unsecured claims against Debtors and their estates except for the DIP Superpriority Claim, including under Bankruptcy Code §§ 503(b), 506(c), 507(a), and 726(b). After payment of the DIP Superpriority Claim, the BMO Superpriority Claim shall be payable from all prepetition and postpetition property of the estates, whether now existing or hereafter arising.

xii. <u>Milestones</u>. Time is of the essence. Debtors shall meet the following milestones unless <u>extended</u> by BMO in writing: (a) the entry of a final adequate protection order in the Cases in form and substance acceptable to BMO no later than July 2, 2026; (b) filing of a plan of reorganization and disclosure statement in the Cases (collectively, the "Debtors' Plan") or a motion to sell substantially all assets pursuant to Bankruptcy Code § 363 in the Cases (the "Debtors' Sale Motion") no later than ninety (90) days after the Petition Date; and (c) the entry of an order confirming the Debtors Plan or entry of an order approving the Debtors Sale Motion no later than one hundred fifty (150) days after the Petition Date (collectively, the "BMO Milestones"). Failure to satisfy any BMO Milestone shall constitute an immediate Event of Default not subject to any cure period unless BMO otherwise agrees in writing.

xiii. <u>Challenge Period</u>. As further adequate protection: (a) subject to the rights of parties in <u>interest</u> other than Debtors, Debtors' stipulations regarding the BMO

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Prepetition Obligations and BMO Prepetition Liens are binding. (b) Any action or proceeding by an official committee (if appointed) or any other party in interest with standing (excluding Debtors) challenging the validity, extent, priority, or enforceability of the BMO Prepetition Obligations or the BMO Prepetition Liens (a "Challenge") must be commenced by filing an adversary proceeding or contested matter no later than 5:00 p.m. (Pacific Time) on the date that is sixty (60) days after the Petition Date (the "BMO Challenge Deadline"). (c) If no committee is appointed, and a trustee is appointed before the Challenge Deadline, such trustee shall have the later of the BMO Challenge Deadline or ten (10) days after appointment to commence a Challenge. Absent a timely Challenge, the BMO Prepetition Obligations and BMO Prepetition Liens shall be deemed allowed, valid, perfected, enforceable, and non-avoidable for all purposes in these cases, subject only to Permitted Senior Liens, if any, and as otherwise provided herein. Any pleading commencing a Challenge shall set forth with particularity the factual and legal basis for such Challenge, and any Challenge not timely commenced and properly pleaded shall be forever barred.

xiv. No Implied Waivers. Except as expressly provided herein, nothing in this Interim Order waives, limits, or impairs any rights or remedies of BMO under the BMO Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law.

I. **Adequate Protection for Prepetition Secured Lenders**.

i. The Prudential Secured Parties and BMO (Prudential Secured Parties and BMO, collectively, the "Prepetition Secured Lenders") are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to Bankruptcy Code sections 361, 362, 363, and 364. Based on the DIP

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including the Cash Collateral), and the Prepetition Secured Lenders in each case have consented or are deemed hereby to have consented to the use of the Prudential Prepetition Collateral and BMO Prepetition Collateral (including the Cash Collateral), the priming of the respective Prudential Prepetition Liens and BMO Junior Liens by the DIP Liens pursuant to the terms set forth in this Interim Order and the DIP Documents; *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by the Prepetition Secured Lenders for the use of Cash Collateral other than on the terms set forth in this Interim Order and in context of the DIP Financing authorized by this Interim Order to the extent such consent has been or is deemed to be have been given, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prudential Prepetition Collateral or BMO Prepetition Collateral (whether junior or senior) other than as contemplated by the DIP Financing authorized by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of the Prepetition Secured Lenders to seek new, different, or additional adequate protection, as applicable, or assert any rights of the Prepetition Secured Lenders, and the rights of any other party in interest, including the Debtors, to object to such relief are hereby preserved.

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ii. Accordingly, under the circumstances of the Chapter 11 Cases, together with the agreement of the Prepetition Secured Lenders to the entry of this Interim Order and the senior, priming liens granted herein in favor of the DIP Lender, as applicable, the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Prepetition Secured Lenders.

iii. The DIP Facility is critical to the Debtors' ability to preserve the Debtors' assets; is in the <u>best</u> interests of the Debtors and their estates; and necessary to avoid irreparable harm to the Debtors, their creditors and their assets, businesses, goodwill, reputation, and employees. Further, access to the proceeds under the DIP Facility is necessary to avoid immediate and irreparable harm to the value of the Debtors' assets and operations.

J. **Extension of Financing**. The DIP Lender committed to provide financing to the Debtors in accordance with the DIP Loan Term Sheet dated May 11, 2026, by and between DIP Lender and Brewster Heights Packing and Orchards, LP (the "DIP Term Sheet" and the financing described therein, the "DIP Facility"), and subject to (i) the entry of this Interim Order, the entry of the Final Order, and approval of the DIP Term Sheet, and (ii) findings by this Court that financing up to $25 million is essential to the Debtors' estates through the Final Hearing. A copy of the DIP Term Sheet is attached hereto as <u>Exhibit A</u>.[4]

---

[4] Prior to the Final Hearing, and subject to Court approval, the DIP Lender and the Debtors will enter into definitive loan and security documents evidencing the DIP Facility as described in the DIP Term Sheet, and such definitive loan and security documents are collectively referred to herein as the "<u>DIP Loan Documents</u>." Entry of the Interim Order shall not commit the DIP Lender to provide additional financing under

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**K. Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility, as set forth in the DIP Term Sheet, (including the fees, expenses, and other amounts paid and to be paid thereunder), are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and the DIP Term Sheet by any Debtor are (and were) granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are (and were) granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby. The DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and, as applicable, their respective professionals. The use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses. The DIP Lender is entitled to the protection and benefits of Bankruptcy Code section 364(e).  The Prepetition Secured Lenders acted in good faith regarding the DIP Financing and the Debtors' use of the Prepetition Lenders' Collateral, respectively, to fund the administration of the Debtors' estates and continued operation of their businesses, including the incurrence and performance of the Prudential Adequate Protection Claims (defined *infra*), payment of the BMO AP Payments out of the BMO Cash Collateral, and the granting of the Prudential Adequate Protection Liens (defined

---

the DIP Facility inconsistent with the DIP Term Sheet and the DIP Loan Documents and the security contemplated therein.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*infra*) and BMO Replacement Liens, in accordance with the terms hereof, and the Prepetition Secured Lenders and their successors and assigns shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code to the fullest extent applicable.

L.     **Relief Essential; Best Interests**. The relief requested in the Motion (and granted or otherwise provided for in this Interim Order), is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003. It is in the best interest of the Debtors' estates and their creditors, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be (a) allowed to enter into the DIP Facility with an interim draw of $20 million and (b) grant the liens and claims contemplated herein and under the DIP Facility to or for the benefit of the DIP Lender.

**NOW**, **THEREFORE**, based upon the foregoing, and after due consideration and good cause appearing therefore, it is

**ORDERED as follows:**

1.     **Motion Granted in Part**. The Motion is granted in part in accordance with the terms and conditions set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled, except as allowed herein.

2.     **DIP Facility.**

a.     *DIP Obligations*. The Debtors are expressly and immediately

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

authorized, empowered, and directed, on an interim basis, to enter into the DIP Facility and to continue to incur and to perform all obligations under the DIP Facility, up to $25 million during the interim period, in accordance with this Interim Order and the DIP Term Sheet. The issuance fee associated with the initial draw of $25 million, pursuant to the DIP Term Sheet, and all other fees set forth in the DIP Term Sheet, shall be an administrative priority claim subject to entry of a Final DIP Order. The Debtors are hereby authorized and directed to pay all principal, interest, fees and expenses, indemnities, as applicable under the DIP Facility, and other amounts described herein and in the DIP Term Sheet as such shall accrue and become due hereunder or thereunder (collectively, all loans, advances, extensions of credit, financial accommodations, fees, interest, MOIC, expenses, obligations, and all other Liabilities (including indemnities and similar obligations), as applicable, in respect of the DIP Facility (the "DIP Obligations"). The DIP Facility and all DIP Obligations shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successors thereto in accordance with their terms. The failure specifically to identify or refer to any particular provision of the DIP Term Sheet or any other agreement in this Interim Order shall not diminish or impair the effectiveness of such provision.

b. *Authorization to Borrow*. In order to enable the Debtors to continue to operate their businesses, subject to the terms and conditions of this Interim Order and the DIP Facility, the Debtors are hereby authorized to enter into the DIP Facility, and draw up to $25 million during the interim period, and, subject to any conditions or limitations set forth in the DIP Term Sheet, to borrow under the DIP Facility.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

c. *DIP Collateral*. As used herein, "DIP Collateral" shall refer to and mean, all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Debtors and all "property of the estate" (as that term is utilized in the Bankruptcy Code) including, without limitation, all cash, cash equivalents, bank deposit and securities accounts, accounts, other receivables, chattel paper, contract rights, crops, farm products, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action (other than avoidance actions) and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.

d. *DIP Liens*. Effective immediately upon entry of the Interim Order, and subject to the Carve Out, and as set forth more fully in this Interim Order and the DIP Facility, the DIP Lender is hereby granted, as collateral security for the DIP Obligations pursuant to and in accordance with sections 364(c) and (d) of the Bankruptcy Code, valid, perfected, continuing, enforceable, non-avoidable first priority liens and security interests on the DIP Collateral of each Debtor (the "DIP Liens"), and, except as expressly provided in this subsection (d) below, shall prime all other liens and security interests on the DIP Collateral, other than the Permitted Senior Liens (defined *infra*), including any liens and security interests in existence on the Petition Date, and

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 116 of 155

any other current or future liens granted on the DIP Collateral, including any adequate protection or Replacement Liens granted on the DIP Collateral (the "Primed Liens"). The DIP Liens shall be effective and perfected as of the entry of this Interim Order, without need for any additional filings or documentation, except to the extent requested by the DIP Lender in its sole discretion. The DIP Liens, DIP Superpriority Claims (defined below) and other rights and remedies granted under this Interim Order to the DIP Lender shall continue in these Chapter 11 Cases and any successor case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any successor case(s), and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Term Sheet and this Interim Order. Notwithstanding the foregoing, the DIP Liens (i) shall be *pari passu* with the Bridge Lender's Prepetition Secured Claim in the Bridge Lender's Prepetition Collateral, with DIP Lender possessing the sole and exclusive right to administer the DIP Collateral before and after a default, and (ii) shall not have first priority, but shall have second priority or third priority, as the case may be, solely with respect to the following permitted senior liens (the "Permitted Senior Liens"):

i.      BMO's security interest in all of the following property and assets of the Debtors, whether real, personal or mixed, or tangible or intangible, in each case, as such terms are defined in the Uniform Commercial Code of Washington:

(a) BMO's security interest in Debtors' inventory of harvested

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 117 of 155

Crops and other farm products grown on permanent plantings, including all harvested apples, cherries, and other tree crops (the *"2025 Crop Inventory"*), and all growing crops and other farm products growing on permanent plantings, including all growing apples, cherries, and other tree crops grown harvested or otherwise severed from the Land, in each case grown during the period beginning November 1, 2024 and ending October 31, 2025 (the "2025 Crop Year") (defined herein as the *"2025 Crops"*) , all packaging and crating related to the 2025 Crop Inventory, and all, proceeds from the 2025 Crop and 2025 Crop Inventory, including general intangibles, insurance proceeds or government payment obligations (the "2025 Crop Collateral");

(b) BMO's security interest in with respect to the 2025 Crop Collateral, to receive monies, payments, proceeds or distributions due to Brewster Heights under that certain Amended and Restated Marketing Agreement with AltaFresh, LLC, a Nevada limited liability company ("AltaFresh") dated May 24, 2021 ("Marketing Agreement Payments"), pursuant to that certain Assignment and License dated June 10, 2021 between Brewster Heights and BMO;

(c) With respect to the 2025 Crop Collateral, BMO's security interest in all crop allotments and rights to crop bases as designated, assigned or approved by the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department, whether federal, state or local, any and all entitlements of any borrower or mortgagor relating thereto, and any and all rights of any borrower or mortgagor (including, without limitation, the right to receive, directly or indirectly, payment whether in cash, such as deficiency payments as

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

provided for in 7 C.F.R. Section 1413, in-kind or otherwise) under any contract or program or agreement with the United States Department of Agriculture, the Commodity Credit Corporation, the United States of America, Department of Agriculture, Farm Service Agency (FSA), or any other governmental agency or department (whether federal, state of local), relating to the that certain real property subject to the BMO Mortgages (as defined below) including without limitation, the Conservation Reserve Program, or the development, ownership, management or operation thereof, in each case solely as proceeds of the 2025 Crop Collateral;

(d) BMO's security interest in the real property commonly known as 125 North Star Road, Brewster, WA 98812, and all fixtures, structures and improvements located thereon, as described in more detail in that certain Deed of Trust, Security Agreement, Assignment of Leases, Rents, and Profits, and Fixture Filing dated August 29, 2022, and recorded in the land records of Okanogan County, Washington on August 29, 2022, as instrument number 3266779.

(e) Vehicles, rolling stock, and farm machinery (including tractors, combines and other farm machinery) and portable irrigation motors on wheels customarily towed by a motorized vehicle ((a)-(e) above, collectively, the "BMO Senior Collateral").

ii.        Other than Prudential Collateral, any security interest or consensual lien held by any financing third party holding a valid first priority, non-avoidable purchase money lien on any equipment of the Debtors as of the Petition Date.

iii.        Mortgage in favor of Happy Valley USA Credit III, LLC pursuant to that certain Real Estate Term Loan 1 in the original principal amount of

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 119 of 155

$4,200,000.00.

iv. Mortgage in favor of North Cascades National Bank pursuant to that certain Business Loan Agreement evidencing a commercial loan in the original principal amount of $1,400,000.00.

e. *DIP Superpriority Claims*. Effective immediately upon entry of this Interim Order, pursuant to Bankruptcy Code section 364(c)(1), and subject in each case to the Carve-Out, the DIP Facility shall be entitled to superpriority administrative expense claim status in the Chapter 11 Cases of each Borrower (the "DIP Superpriority Claims"), which DIP Superpriority Claims in respect of the DIP Facility shall have priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which shall be payable from and have recourse to all assets and properties of the Debtors, and which shall be against each of the Debtors who are Debtors (jointly and severally), with priority over any and all other administrative expenses, adequate protection claims, diminution in value claims, and all other claims asserted against the Debtors now existing or hereafter arising of any kind whatsoever (whether secured or unsecured), subject only to the Carve-Out.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

3. **Authorization and Approval to Use DIP Facility Proceeds**. Subject to the terms and conditions of this Interim Order, the DIP Facility, and the Interim DIP Budget attached hereto as Exhibit B ("Interim DIP Budget"), each Debtor is authorized to use the DIP Facility proceeds, up to $25 million during the interim period. The Debtors shall provide weekly variance reports to the DIP Lender and Prepetition Secured Lenders (i.e., reports reflecting the difference between the budgeted amount of revenue and expenses and the actual amounts) in the same format as the Interim DIP Budget (the "Variance Reports"). Said Variance Reports shall be due on or before 5:00 p.m. (prevailing Pacific Time), beginning on June 17, 2026, and continuing on the same day of each following week until termination of this Interim Order or the entry of a Final Order. Absent express written consent of the DIP Lender, it shall constitute a DIP Termination Event if any Variance Report reflects a negative variance of greater than 20% in the aggregate trailing rolling disbursements for a given week under the Interim DIP Budget. Notwithstanding anything to the contrary in this Interim Order, the DIP Term Sheet, any DIP Loan Documents, the Interim DIP Budget, or any other order of the Court, the Debtors shall not make or seek authority to make any payments on account of (a) prepetition claims under any critical vendor, essential vendor, 503(b)(9), lien claimant, or similar program (collectively, "Critical Vendor Payments") or (b) any key employee retention plan, key employee incentive plan, management incentive plan, bonus, retention, severance, transaction, sale, change-in-control, or similar compensation program (collectively, "KERP Payments"), in each case without the prior written consent of the DIP Lender and the Prudential Secured Parties; provided that the Prudential Secured Parties consent shall be deemed given solely with

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

respect to any Critical Vendor Payment or KERP Payment that is specifically identified by payee, amount, timing, and purpose in a DIP Budget approved in writing by the Prudential Secured Parties.

4. **Adequate Protection for Prepetition Secured Lenders**. The Prepetition Secured Lenders are provided adequate protection by their consent to entry of this Interim Order, through their Replacement Liens on their Prepetition Collateral, and, as applicable, Permitted Senior Liens, and solely to the extent of any diminution in the value of their respective interests in the Prepetition Collateral resulting from, among other things, and only to the extent applicable, the subordination to the Carve Out and to the DIP Liens, the Debtors' use, sale, or lease of such Prepetition Collateral, and the imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "Diminution in Value") (and subject to the Carve Out and the Debtors' preserved rights pursuant to section 506(c) of the Bankruptcy Code), in the form of replacement security interests in and liens on substantially all of the Debtors' assets and property (with certain exclusions) and superpriority claims (in each case, in accordance with their relative priorities, and junior and subject to the liens and superpriority claims granted to the DIP Lender) any claims arising on account of such Diminution in Value, the "Prepetition Secured Lender Adequate Protection Claims."

Accordingly, under the circumstances of the Chapter 11 Cases, the Replacement Lien, Permitted Senior Liens (as applicable), together with the substantial benefits associated with the relief granted herein, provide adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 to the Prepetition Secured Lenders.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

a. *Senior Secured Lenders' Adequate Protection Liens*. The Senior Secured Lenders are hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, (i) in the case of Prudential, in the amount of the Prudential Adequate Protection Claims valid, perfected replacement security interests in and liens upon all of the DIP Collateral (the "Prudential Adequate Protection Liens"), (ii) in the case of BMO, in the amount of the BMO Adequate Protection Claim, valid, perfected replacement security interests in and liens upon all of the BMO Prepetition Collateral (the "BMO Adequate Protection Liens"), in each case subject and subordinate only to the DIP Liens, the DIP Superpriority Claims, the Carve-Out and, solely with respect to assets subject to Permitted Senior Liens, such Permitted Senior Liens

i. *Section 507(b) Claims*. The Prudential Secured Parties are hereby granted, subject to the Carve-Out, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prudential Adequate Protection Claims, which, to the fullest extent permitted under the Bankruptcy Code, shall be junior in priority to the DIP Superpriority Claims and the Carve-Out, pari passu with the BMO Superpriority Claim, and senior in priority in payment over any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Prudential 507(b) Claims"), which Prudential 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, but including, subject to entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise, from such avoidance actions, whether by judgment, settlement or otherwise. The Prudential Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prudential 507(b) Claims unless and until the DIP Obligations have been indefeasibly paid in cash in full and all commitments under the DIP Facility have been terminated.

5. **Perfection of DIP Liens and Adequate Protection Liens**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing:

a. The DIP Lender may file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Bankruptcy Code section 362 in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder;

b. The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens; and

c. In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, the DIP Lender may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded as of the Petition Date.

6. **Effect of DIP Termination Event**

a. *DIP Termination Event*. For purposes of this Interim Order, the term "DIP Termination Event" shall mean: (i) the occurrence of the Repayment Date (as defined in the DIP Term Sheet), (ii) the occurrence of any material breach under this Interim Order by the Debtors or an Event of Default under the DIP Term Sheet, which Events of Default include (aa) failure to timely achieve any of the Chapter 11 Milestones set forth in the DIP Term Sheet or this Interim Order, (bb) material breach of any covenant set forth in the DIP Term Sheet or this Interim Order, (cc) misuse of the DIP Facility proceeds, and (dd) dismissal or conversion of any of the Chapter 11 Cases, or appointment of a trustee, or (iii) the acceleration of the DIP Obligations or termination of the DIP Facility in accordance with the terms of the DIP Term Sheet or this Interim Order. For the avoidance of doubt, upon the sale of all or any portion of the DIP Collateral, the proceeds of such sale of DIP Collateral shall be used to pay the DIP Obligations unless otherwise agreed by the DIP Lender. Debtors' acceptance of an

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 125 of 155

offer to sell all or any portion of the DIP Collateral that would not pay the DIP Obligations in full shall constitute a DIP Termination Event.

b. *Exercise of Remedies*. Upon the occurrence of a DIP Termination Event, of which written notice (including via email) of the occurrence of such DIP Termination Event is delivered by the DIP Lender to the Notice Parties (as defined herein) (the "Remedies Notice" and such date, the "DIP Termination Declaration Date"), without further notice to, hearing of, application to, or order from this Court, subject to the expiration of the Remedies Notice Period (as defined below), the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any of the following actions, at the same or different time: (i) declare the termination, reduction or restriction of any commitments under the DIP Facility to the extent any such commitment remains; (ii) declare all DIP Obligations to be immediately due and payable, without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the Debtors; (iii) declare the termination, restriction or reduction of the DIP Facility and the DIP Term Sheet as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims, or the DIP Obligations; (iv) charge default interest at the default rate set forth in the DIP Term Sheet; and (v) declare the termination, restriction, or revocation of the ability of the Debtors to use cash DIP Collateral.

c. *Remedies Notice Period*. The Debtors may seek an emergency hearing solely during the period beginning on the DIP Termination Declaration Date and through the date that is five (5) business days after the DIP Termination

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Declaration Date (such period, the "Remedies Notice Period"). If, notwithstanding the foregoing, a hearing cannot be scheduled prior to the expiration of the Remedies Notice Period, the Remedies Notice Period shall be deemed automatically extended until such time as the matter can be heard by the Court. At any hearing regarding a Remedies Notice, the Court may only consider whether an Event of Default has occurred or is continuing (other than, for the avoidance of doubt, the occurrence of the Repayment Date under the DIP Term Sheet). During the Remedies Notice Period, the Debtors shall not have the right to receive DIP Facility advances without the consent of the DIP Lender in its sole discretion, but shall continue to have the right to use DIP Collateral in accordance with the terms of this Interim Order and the Interim DIP Budget, solely to pay any expenses necessary to (i) preserve the Debtors' going-concern value or (ii) contest, in good faith, the occurrence of the Event of Default (other than, for the avoidance of doubt, the occurrence of the Repayment Date under the DIP Term Sheet); provided, however, that the professional fees and expenses of the Professional Persons (as defined below) shall be governed by terms hereof and subject to the Interim DIP Budget in all respects.

d. *Rights and Remedies Following Termination Date*. Following the expiration of the Remedies Notice Period and, unless the Repayment Date has not occurred and this Court has entered an order prior to the expiration of the Remedies Notice Period finding that an Event of Default has not occurred or is not continuing, the DIP Lender shall be entitled to exercise all rights and remedies in accordance with this Interim Order, the DIP Term Sheet, the other DIP Loan Documents (if any), applicable law, and the automatic stay of section 362 of the Bankruptcy Code shall automatically,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11   Doc 29   Filed 06/05/26   Entered 06/05/26 17:07:01   Pg 127 of 155

without further order of this Court, be lifted, to allow the DIP Lender to pursue all rights and remedies in accordance with the DIP Term Sheet, the other DIP Loan Documents (if any), this Interim Order, and applicable law.

7. **Carve-Out.** The DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the Carve Out or as otherwise provided in this Interim Order. The Carve Out shall mean a carve-out in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all reasonable and documented fees and expenses incurred by a trustee under Bankruptcy Code section 726(b), in an aggregate amount not to exceed $50,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise (unless subsequently disallowed), all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, or 363 or by the Committee, pursuant to Bankruptcy Code sections 328 and 1103 (collectively, the "Professional Persons"), provided however, that in the event of a DIP Termination Event, Professional Fees incurred on and after the first business day following delivery of the Remedies Notice shall not exceed $250,000 in the aggregate.

8. **Effect of Stipulations on Third Parties**.

a. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, Findings G and H hereof (collectively, the "Debtors' Stipulations"), shall be binding upon the Debtors and any

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' Stipulations shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (a) such committee or any other party in interest with requisite standing (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, in this paragraph) by no later than (i)(x) as to the Committee only, 60 calendar days from the formation of the Committee, (y) if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee and chapter 11 trustee) to the date that is the later of (1) 60 calendar days after entry of this Interim Order, or (2) the date that is 30 calendar days after the appointment of such chapter 7 or chapter 11 trustee, and (z) as for all other parties in interest, 60 calendar days after entry of this Interim Order; (ii) any such later date as has been agreed to in writing by the Debtors, the DIP Lender, and the Prepetition Secured Lenders; or (iii) any such later date as has been ordered by the

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 129 of 155

Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Lenders' Prepetition Obligations or the Prepetition Secured Lenders' Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Lenders or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Secured Lenders' Prepetition Loan Documents, the Prepetition Secured Lenders' Prepetition Obligations, the Prepetition Secured Lenders' Prepetition Liens and the Prepetition Secured Lenders' Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred, including any amended or additional claims that may or

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

could have been asserted thereafter through an amended complaint under Fed. R. Civ. P. 15 or otherwise.

b. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' Stipulations shall be binding on all parties in interest; (2) the obligations of the Debtors under the Prepetition Secured Lenders' Loan Documents, including the Prepetition Secured Lenders' Obligations, shall constitute allowed claims not subject to defense, avoidance, reduction, setoff, claim, counterclaim, cross-claim, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, recoupment, offset, avoidance, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (3) the Prepetition Secured Lenders' Liens on the Prepetition Secured Lenders' Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, claim, counterclaim, cross-claim, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, recoupment, offset, avoidance, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity; and (4) the Prepetition Secured Lenders' Obligations and the Prepetition Secured Lenders' Liens on the Prepetition Secured Lenders' Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11     Doc 29     Filed 06/05/26     Entered 06/05/26 17:07:01     Pg 131 of 155

including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Lenders and their Representatives arising out of or relating to any of the Prepetition Secured Lenders' Loan Documents, the Prepetition Secured Lenders' Obligations, the Prepetition Secured Lenders' Liens and the Prepetition Secured Lenders' Collateral shall be deemed forever waived, released and barred.

c. If any such Challenge is timely filed during the Challenge Period, the Debtors' Stipulations shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such Debtors' Stipulations were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Secured Lenders' Loan Documents, the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Prepetition Secured Lenders' Obligations or the Prepetition Secured Lenders' Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.

9. **Other Rights and Obligations**.

a. *Expenses*. The Debtors will be responsible for the DIP Lender's out of pocket reasonable fees and expenses incurred by the DIP Lender to negotiate and put the DIP Facility in place, to document the DIP Facility, to manage the DIP Facility, and to enforce the terms of the DIP Obligations. For the avoidance of doubt, the DIP Lender is authorized to apply the Expense Deposit (as defined in the DIP Term Sheet) to pay the fees and expenses described herein.

b. *Binding Effect*. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and the Prepetition Secured Lenders, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 cases.

c. *Limitation on Surcharge.* No costs or expenses of administration of the Chapter 11 Cases or any successor case(s), or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, including Cash Collateral, or the Prudential Prepetition Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or the Prudential Secured Parties, as applicable, and no

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 40

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prudential Secured Parties. Nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender or the Prudential Secured Parties to any charge, lien, assessment, or claim against the DIP Collateral or the Prudential Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise; provided further that the foregoing waiver shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of such Final Order.

d. *Application of Collateral Proceeds*. To the extent required by this Interim Order and the DIP Term Sheet, unless otherwise ordered by the Court, after (a) a DIP Termination Event and (b) the receipt by the Debtors of written notice that the DIP Lender will no longer fund the Debtors through the proceeds of the DIP Facility, the Debtors are hereby authorized to remit to the DIP Lender, subject to the payment of the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral subject to the lien priorities set forth in Paragraph 2(d) herein until the DIP Obligations are paid in full, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Term Sheet. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, security interest in favor of the DIP Lender, of first priority except to extent of any Permitted Senior Liens thereon, (b) upon the occurrence and during the continuance of an Event of Default (as defined

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

in the DIP Term Sheet), each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Lender to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Lender by wire transfer (to such account as the DIP Lender shall specify, or in such other manner as the DIP Lender shall direct) all such cash, securities, investment property and other items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance that is or may be invoked against the DIP Lender and (c) any deposit account or securities account control agreement executed and delivered by any bank or other financial institution or any Debtor prior to the Petition Date shall establish co-control in favor of the DIP Lender of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Lender), and all rights thereunder in favor of any Prepetition party shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lender, until all of the DIP Obligations have been paid in full in cash.

e. *No Marshaling*. In no event shall the DIP Lender or the Prudential Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to *the* DIP Collateral, the DIP Obligations, the Prudential Prepetition Obligations, the Prudential Adequate Protection Claims, or the Prudential Prepetition Collateral; provided that the foregoing waiver shall be without prejudice to

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

any provisions of the Final Order. Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prudential Secured Parties with respect to proceeds, products, offspring, or profits of any Prudential Prepetition Collateral; provided that the foregoing waiver shall be without prejudice to any provisions of the Final Order.

        f.    *Collateral Rights.* Subject to this Interim Order and any further order of the Court *entered* without the objection of the DIP Lender authorizing the Debtors to make payments to prepetition creditors, if any party who holds a lien or security interest in DIP Collateral that is junior or otherwise subordinate to the DIP Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lender and shall immediately turn over such proceeds to the DIP Lender for application to repay the DIP Obligations in accordance with the DIP Term Sheet and this Interim Order until the DIP Obligations are indefeasibly paid in full in cash.

        g.    *Injunction.* Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on DIP Collateral or any portion thereof to any other party, *pursuant* to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lender except in accordance with the DIP Term Sheet and this Interim Order.

[PROPOSED] INTERIM ORDER AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION FINANCING AND
SETTING A FINAL HEARING– Page 43

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

h. *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not *create* any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

i. *Limits on Lenders' Liability.* Nothing in this Interim Order or in the DIP Term Sheet or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts. In (a) administering the DIP Facility, (b) extending other financial accommodations to the Debtors under the DIP Term Sheet, and (c) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Term Sheet or this Interim Order or (y) be deemed to be exercising control over any operations of the Debtors or acting in any way as a responsible person.

j. *Amendment*. The Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Term Sheet without further notice to or approval of the Court (but upon two (2) Business Days' prior notice, solely to the extent reasonably practicable under the circumstances, having been given to counsel to the Committee (if any) *and* the U.S. Trustee of any formal amendment or modification; *provided* that such notice shall not be deemed to create any Committee or U.S. Trustee approval rights, unless such amendment or modification, (a) increases the interest rate or fees charged in connection with the DIP Facility (other than consent or amendment

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

fees in connection with such amendment or modification); or (b) increases the commitments of the DIP Lender to make extensions of credit under the DIP Facility. Except as otherwise provided herein, no other waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Lender, as applicable, and approved by the Court after notice to parties in interest.

k. *Priority of Terms*. To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Term Sheet, the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Term Sheet, the terms and provisions of this Interim Order shall govern.

l. *Survival of Interim Order*. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) terminating the joint administration of the Chapter 11 Cases, (v) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. Except to the extent approved by the DIP Lender and as may be set forth in the Final Order (if entered), the terms and provisions of this Interim Order, including all

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the rights, remedies, powers, privileges, liens, priorities, the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order or the Final Order, and any protections granted to or for the benefit of the Prepetition Secured Lenders (including any adequate protection, if applicable), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, and such DIP Liens and DIP Superpriority Claims shall maintain their priorities as provided by this Interim Order and the DIP Term Sheet, until all of the DIP Obligations have been indefeasibly paid and fully satisfied.

m. *Dismissal and Conversion*. If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens and the DIP Superpriority *Claims*, granted hereunder and in the DIP Term Sheet, shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents; and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens and the DIP Superpriority Claims. Any order dismissing any of these Chapter 11 Cases shall not be effective until the DIP Liens on the DIP Collateral are fully perfected under applicable non-bankruptcy law.

n. *Subsequent Reversal or Modification*. This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 46

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(c), granting the DIP Lender all protections and benefits afforded by section 364(e) of the Bankruptcy Code.

o. *Enforceability*. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the *Petition* Date immediately upon execution hereof.

p. *Assignment*. The DIP Lender may assign the DIP Facility, along with the DIP Collateral and DIP Liens, *without* consent or court, and the assignee shall have all the rights of DIP Lender hereunder.

q. *Waiver of any Applicable Stay*. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is *hereby* waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

r. *Reservation of Rights of Prepetition Secured Lenders*. Under the circumstances and given that the above-*described* adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Lenders; provided that the Prepetition Secured Lenders may request further or different adequate protection, and the Debtors or any other party in interest may contest any such request.

10. **Final Hearing**. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for July \_\_, 2026, at \_:\_\_ a/p.m. (prevailing Pacific Time) at the United States Bankruptcy Court for the Eastern District

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 47

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 140 of 155

of Washington. The Debtors shall promptly mail copies of this Interim Order to the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been appointed, or Committee Counsel, if the same shall have been appointed. Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than June __, 2026, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtors; (b) counsel to the DIP Lender; (c) counsel for Prudential; (d) counsel for BMO; (e) counsel to any Committee; and (f) the U.S. Trustee (collectively, the "Notice Parties").

11. **Retention of Jurisdiction**. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

/// End of Order ///

Presented by:

BUSH KORNFELD LLP

By_____
   Christine M. Tobin-Presser, WSBA #27628
   Thomas A. Buford, WSBA #52969
   Jason Wax, WSBA #41944
   Shane E. Creason, WSBA #63865

 and

   John E. Mitchell (*Pro Hac Vice* Pending)
   Yelena E. Archiyan (*Pro Hac Vice* Pending)
   Katten Muchin Rosenman LLP
   2121 N. Pearl Street, Suite 1100
   Dallas, TX 75201
   Telephone: (214) 765-3600
   Emails: john.mitchell@katten.com
   and yelena.archiyan@katten.com

Proposed Attorneys for the Debtors

[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING AND SETTING A FINAL HEARING– Page 48

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 4630
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 141 of 155

# EXHIBIT A

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 142 of 155

**DIP LOAN TERM SHEET**

**Brewster Heights Packing and Orchards, LP and Each of its Affiliates Companies**

This term sheet (this "Term Sheet") summarizes the principal terms of a financing (the "DIP Loan") between the Borrowers and Sandton Capital Partners, LP and its Assigns ("Sandton" or "Lender") for a sale of the Borrower's business to a stalking horse bidder in a planned bankruptcy proceeding.  Until such time as the Borrower achieves approval by the Bankruptcy Court (as defined below) and entry of the Interim DIP Order (as defined below) and the Final DIP Order (as defined below), each in form and substance acceptable to Lender, this Term Sheet is not a commitment to lend and is not binding upon Sandton.  By receipt of these terms and conditions, the recipient acknowledges that these materials are confidential and proprietary to Sandton and, in consideration for Lender providing these materials to the recipient, the recipient undertakes not to disclose or provide these materials to third parties (except as set forth below under the heading "Confidentiality") without the consent of Sandton.

| | |
|---|---|
| **Lender:** | Sandton Capital Solutions Master Fund VI, LP and/or one or more of its affiliated funds and accounts (the "Lender"). |
| **Borrowers:** | Brewster Heights Packing and Orchards, LP and the direct and indirect subsidiaries identified as signing parties hereto (collectively, the "Borrowers").[1] |
| **DIP Loan Amount:** | Lender will provide a loan (the "DIP Loan") to Borrowers up to a funded amount not in excess of $72.0 million (the "Total Commitment Amount") based on the DIP Budget and as set forth in Funded Amount below, subject to the entry of an interim (the "Interim DIP Order") and a final order (the "Final DIP Order") approving the DIP Loan by the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court"). |
| **Use of Proceeds:** | The DIP Loan will be available to Borrowers to fund operating expenses, portfolio company needs, restructuring costs, professional fees, case administration costs, repayment of any pre-petition bridge loan facility, and other general corporate purposes as set forth in a budget prepared by the Borrowers (the "DIP Budget"). The DIP Budget will be agreed to by Borrowers and Lender, and Prudential as a condition to its subordination to Lender's liens pursuant to the terms hereof. |

---

[1] Gebbers Orchards, Inc., Gebbers Farms Inc., C&M II, LLC, D&E Storage, LLC, Northco, LLC, P&G Orchards, LLC, Repo, LLC, TJF Properties, LLC, Westco Orchards, LLC, Westco Sales, Inc., and such other entities as agreed to.

305163555v3

| | |
|---|---|
| **Funded Amount:** | The DIP Loan shall be funded, up to a maximum amount of $72.0 million, as provided herein and on the below funding dates.<br><br>• **Initial Draw, up to a funded amount of $20.0 million.** This amount will be immediately available for draw upon Bankruptcy Court approval and entry of the Interim DIP Order in form and substance acceptable to Lender.<br><br>• **Maximum Additional Draws, up to a funded amount of $52.0 million.** The maximum additional draws will be up to a funded amount of $52.0 million in total, in accordance with duly executed and binding documentation to be executed and delivered by the parties (the "Definitive Documents"), upon Bankruptcy Court approval and entry of the Final DIP Order in form and substance acceptable to Lender. |
| **Funding Dates:** | • **Initial Draw, up to a funded amount of $20.0 million.** Available on the entry of the Interim DIP Order approving the DIP Loan on an interim basis (the "Initial Draw").<br><br>• **Additional Draws, up to a funded amount of an additional $52.0 million.** Upon Bankruptcy Court approval and entry of the Final DIP Order in form and substance acceptable to the Lender, an additional $52.0 million of the Total Commitment Amount will be immediately available for draw in accordance with the Definitive Documents. Additional draws will each be in a minimum funded amount of $5.0 million and subject to a 7-day advance notice (the "Additional Draws", which, when taken together with the Initial Draw, constitute the "Principal Amount"), provided that the aggregate funded amount of all Additional Draws may not exceed $52.0 million. |

305163555v3

| | |
|---|---|
| **Maturity:** | Lender will be entitled to immediate repayment of all outstanding obligations under the DIP Loan on the earliest of (collectively, the "<u>Repayment Date</u>"):<br><br>(a) the effective date of the plan of reorganization;<br><br>(b) closing on a sale of all or substantially all of the Borrowers' assets (unless otherwise agreed to by the parties); and<br><br>(c) 9 months from the date of origination ("<u>Maturity Date</u>"), subject to extensions as set forth below (for a total of up to 12 months from the date of origination).<br><br>Lender will consider converting some or all of the DIP Loan to an exit financing facility in conjunction with a sale or an emergence from chapter 11 (subject to terms agreeable to Lender and Lender's internal approvals). |
| **Amortization:** | None. |
| **Prepayment:** | The Borrower may prepay the DIP Loan in full or in part at any time (the date on which any such prepayment occurs, a "<u>Prepayment Date</u>"). There will be a mandatory repayment of the DIP Loan upon the sale of any assets with the net proceeds thereof (unless otherwise agreed to by the parties). |
| **Loan Interest Rates and Fees:** | The DIP Loan interest rates and fees will be as follows:<br><br>(i)    <u>Issuance Fee</u>: The Borrowers will pay Lender an issuance fee of 2.0% of the amount of the Initial Draw and each Additional Draw, which fee will be earned and payable on the date of each draw (the issuance fee will be capitalized and added to the Principal Amount but not counted against draw limits).<br><br>(ii)   <u>Cash Interest</u>: None.<br><br>(iii)  <u>PIK Interest</u>: The Borrowers will pay the Lender PIK interest at 12.5% <u>per annum</u> on the outstanding Principal Amount, which shall be added to the Principal Amount on a monthly basis but not counted against draw limits for any of the draws contemplated herein. The Borrower may choose to pay any portion of this PIK interest in cash on a monthly basis.<br><br>(iv)  <u>Exit Fee</u>: The Borrowers will pay the Lender an exit fee of 2.0% multiplied by the repaid Principal |

305163555v3

Amount. Such exit fees will be payable on the earlier to occur of any Prepayment Date and Repayment Date.

(v) <u>Default Interest Rate</u>: During the occurrence and continuance of an Event of Default, the PIK interest rate will increase by 3.0%.

(vi) <u>Renewal Fees</u>: If the DIP Loan is not repaid in full on or before the Maturity Date, time being of the essence, the Borrowers will pay to the Lender, in addition to all other fees and other amounts as set forth in this Term Sheet, a renewal fee of 1.0% of the Total Commitment Amount as of the Repayment Date, which shall extend the Repayment Date by an additional 3 months (the renewal fee will be capitalized and added to the Principal Amount at the time of extension, but, if applicable, will not count against draw limits). Borrowers shall be entitled to no more than one (1) 3-month extension period at the Maturity Date.

(vii) <u>Unused Fee</u>: The Borrowers will pay the Lender an unused fee at 2.0% <u>per annum</u> on the undrawn outstanding Total Commitment Amount which shall be added to the Principal Amount on a monthly basis and will not count against draw limits for any of the draws contemplated herein.

(viii) <u>Minimum Multiple of Invested Capital.</u>  The Borrowers will pay the Lender a cash fee at exit such that the Lender's multiple of invested capital for each draw (the Initial Draws and each Additional Draw individually), exclusive of any fees, shall be no less than 1.125x.

| | |
|---|---|
| **Cash Flow Milestones:** | Cash flow milestones to be such that Borrowers are within 20% of their aggregate trailing rolling disbursements per agreed DIP Budget (as approved by the Lender). |
| **Collateral Security and Priority:** | Other than certain real estate collateral and immaterial personal property collateral secured by perfected, unavoidable pre-petition liens of third party lenders other than Prudential, which permitted liens shall be scheduled and approved by Lender in its reasonable discretion ("Permitted Liens"),[2] the collateral and priority for the DIP Loan (the "Collateral") will |

---

[2] Sandton to review and approve senior liens.  Borrowers to provide schedule and copies of non-Pru CRE lender docs.

305163555v3

| | |
|---|---|
| | include pursuant, to Bankruptcy Code sections 364(c)(1), 364(c)(2), 364(c)(3), and, subject to entry of the Final DIP Order, 364(d), a fully perfected first priority security interest in all of the existing and after-acquired real property and personal, tangible and intangible, assets of the Borrowers including, without limitation, all cash and cash equivalents (including the Restricted Cash), bank deposit and securities accounts, accounts, securities, shares other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, general intangibles, investment property, supporting obligations, tax refunds, securities, franchise rights, letter of credit rights, commercial tort claims, causes of action and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, patents, tradenames, trademarks, copyrights, intellectual property and all substitutions, accessions and proceeds of such intellectual property, wherever located, including insurance or other proceeds.<br><br>With respect to assets subject to Permitted Liens, Lender will receive 2nd or 3rd liens on such assets. |
| **Chapter 11 Milestones:** | The DIP Facility shall be subject to the following bankruptcy milestones:<br><br>i. No later than three (3) business days after the Petition Date (subject to the Bankruptcy Court's docket) the Bankruptcy Court shall enter the interim order approving the DIP Facility which shall be in form and substance acceptable to the DIP Lender;<br><br>ii. No later than thirty-five (35) calendar days after the Petition Date (subject to the Bankruptcy Court's docket), the Bankruptcy Court shall have entered the final DIP order approving the DIP Facility, which order shall be in form and substance acceptable to the DIP Lender;<br><br>iii. No later than fourteen (14) business days after the Petition Date, the Debtors shall have filed an appropriate motion with the Bankruptcy Court in form and substance satisfactory to the DIP Lender for entry of an order providing for bid procedures for the sale of the Debtors' assets that establishes a date that is no later than seventy five (75)days after the Petition Date as the |

5

<table>
<tr>
<td></td>
<td>deadline for submission of binding bids with respect to the Debtors' assets, which motion shall also seek approval of a stalking horse bid, if available, no later than thirty five (35) prior to the bid deadline (the "<u>Bidding Procedures</u>");</td>
</tr>
<tr>
<td></td>
<td>iv. No later than thirty five (35) days after the Petition Date, the Bankruptcy Court shall have entered one or more order(s) (which shall be in form and substance acceptable to the DIP Lender) approving the bidding procedures (the "<u>Bid Procedures Order</u>");</td>
</tr>
<tr>
<td></td>
<td>v. Subject to the Bankruptcy Court's entry of the Bid Procedures Order, no later than eighty (80) days after the Petition Date, the Debtors shall have commenced an auction for all or substantially all of the Debtors assets, in accordance with the Bid Procedures Order;</td>
</tr>
<tr>
<td></td>
<td>vi. No later than eighty five (85) days after the Petition Date, the Bankruptcy Court shall have entered one or more sale order(s) approving each of the winning bid(s) from such sales; and</td>
</tr>
<tr>
<td></td>
<td>vii. Subject to the Bankruptcy Court's entry of an order approving the Debtors proposed Bidding Procedures, closing of the winning bid(s) shall have occurred no later than the date that is one hundred twenty (120) days after the Petition Date.</td>
</tr>
<tr>
<td><strong>Covenants:</strong></td>
<td>Affirmative, negative, and other financial and operational covenants customary for transactions of this type, including but not limited to:

<ul>
<li>Effective upon the entry of the Final DIP Order, minimum cash balance in an amount to be mutually agreed (which may be funded from borrowed funds);</li>
<li>Maximum capital expenditures;</li>
<li>No dividends or any other upstream payments or distributions other than any such dividends, payments or distributions (i) by any subsidiary to any Borrower or (ii) payable solely in common stock or other equity interests that is not disqualified equity or (iii) payable to an affiliate for services provided in the ordinary course after prior review and approval of Lender;</li>
<li>No change of control, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to sections 363 or 1129 of the Bankruptcy Code;</li>
</ul>
</td>
</tr>
</table>

6

305163555v3

|  | • Maintenance of appropriate insurances and addition of Lender as additional insured, lender's loss payee and/or mortgage, as applicable, under such insurance policies;<br>• Limitations on additional debt, guarantees, and hedging arrangements, including the subordination of all intercompany indebtedness;<br>• Limitations on liens and further negative pledges;<br>• Limitations on sales, transfers, and other dispositions of assets other than as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to sections 363 or 1129 of the Bankruptcy Code;<br>• Limitations on loans and investments;<br>• Agreed upon milestones for the Borrowers' chapter 11 cases, including confirmation of a plan of reorganization; and<br>• Limitations on creating new subsidiaries or becoming a general partner in any partnership. |
|---|---|
| **Representations and Warranties:** | Usual and customary representations and warranties, including organization in good standing, validity of agreements, tax status, compliance with law, and operational and financial disclosures. |
| **Reporting:** | • Cash flow variance reporting provided weekly<br>• Updated DIP Budgets provided monthly<br>• Financial reporting generally provided by debtors in possession to their secured lenders in chapter 11 cases<br>• Any reporting provided to other parties in interest in the Borrowers' chapter 11 cases |
| **Customary Terms:** | Usual and customary non-monetary terms, including, without limitation, releases of claims and causes of action, acknowledgements, and findings.<br><br>For professional fees incurred pre-default, the liens securing the DIP obligations, the DIP obligations' status as "superpriority" claims, the "super-priority" claims and liens constituting adequate protection claims, and the liens securing the prepetition loan obligations shall be subject to a "carve-out" in favor of court approved professionals and the United States Trustee statutory fees in amounts consistent with the approved DIP Budget and approved by the Bankruptcy Court, following notice and a hearing. For fees incurred post default, the carve-out will be limited and capped in the amount of $250,000 in the aggregate for all court approved professionals. The carve out shall include such other customary terms for a |

7

305163555v3

| | |
|---|---|
| | transaction of this type (the "Carve-Out"). |
| **Events of Default:** | Events of Default will include, in addition to other such events customarily found in transactions similar to the DIP Loan:<br><br>• Payment defaults<br>• Covenant defaults<br>• Representation or warranty breaches<br><br>Among other remedies, upon the occurrence and continuance of an Event of Default, and subject to a remedies notice period (as described in the Interim DIP Order) and the terms of the Interim DIP Order, the Lender may accelerate all of the DIP Loan obligations and enforce its remedies against the Collateral. |
| **Expenses:** | The Borrowers will be responsible for all reasonable and documented out of pocket fees and expenses incurred by the Lender to perform due diligence and in connection with the negotiation, preparation, documentation and administration of the Definitive Documents, and court approval, regardless of whether the transactions contemplated in this Term Sheet or in the Definitive Documents are consummated. The Borrowers will be responsible for all out of pocket fees and expenses incurred by Lender to enforce the terms of the DIP Loan or otherwise to protect its rights under the Definitive Documents.<br><br>A deposit of $80,000 (the "Expense Deposit") shall be payable upon acceptance of this Term Sheet and used for transaction and diligence expenses. Any such reasonable and documented fees and expenses incurred by legal counsel to the Lender shall be paid timely in cash regardless of the DIP Budget. |
| **Contingencies:** | Lender has received the Expense Deposit, completed its due diligence (which must be satisfactory to Lender in its sole discretion), the parties have executed Definitive Documents (which, for purposes of the Initial Draw, may solely be this Term Sheet), the entry of the Interim DIP Order and the entry of the Final DIP Order consistent with the terms set forth herein. |
| **Governing Law, Waiver of Jury Trial, Jurisdiction:** | In connection with the transaction outlined in this Term Sheet, all parties agree: (i) that the law of the State of New |

305163555v3

| | York governs without regard to any conflict of law principals; (ii) to the waiver of a trial by jury; and (iii) to the exclusive jurisdiction of the Bankruptcy Court, and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the jurisdiction of the state and federal courts located in the Eastern District of Washington. The Definitive Documents will be governed by New York law. |
|---|---|
| **Exclusivity:** | Borrowers agree to negotiate exclusively with Lender with respect to DIP financing and will not take any action, directly or indirectly, to encourage, initiate or, subject to the last sentence under this heading, engage in discussions with any other party concerning any DIP financing. Borrowers will neither solicit nor, subject to the last sentence of this heading, accept any competing bids concerning any DIP financing from any other party during the tenure of this Term Sheet. Notwithstanding the foregoing, to the extent any party approaches the Borrowers with a financing or other potential transaction that is more favorable to the Borrower than the terms described in this Term Sheet, the Borrowers shall be permitted to engage in discussions with such party.<br><br>For the avoidance of doubt, the Borrowers are free to explore and negotiate either (i) a sale transaction (either in or out of court) or (ii) a financing transaction solely for the purpose of financing the Borrowers' operations outside of and in lieu of a Chapter 11 filing. |
| **Confidentiality:** | Prior to the Borrowers' commencement of a case under chapter 11 of the Bankruptcy Code, Borrowers shall not disclose to any person or entity the terms or conditions of this term sheet or any information about the transaction, including, without limitation, the existence, status, nature, terms or conditions of the discussions or actions by the parties relating to the potential transaction except Borrowers may disclose such matters (i) to their affiliates and their and their affiliates' employees, members, managers, administrators, directors, officers, partners, advisors and other agents who need to know such matters for the sole purpose of permitting Borrowers to evaluate or consummate the potential transaction, (ii) and to Borrowers' existing secured mortgage and operating lenders, (iii) as explicitly approved in advance in writing by Lender or (iv) to the extent, in the reasonable judgment of Borrowers, required by any applicable law or order, in which case Borrowers shall use commercially reasonable efforts to allow Lender reasonable time to |

305163555v3

Docusign Envelope ID: 5AC1C6D4-4BB7-8A67-8181-E10D7AC08660

| | comment on such disclosure in advance thereof. |
|---|---|
| **Definitive Documents:** | Other than the Initial Draw that may be documented solely by this Term Sheet, the DIP Loan will be documented by, among other things, a promissory note, security agreement, credit agreement, and mortgage(s), all of which will be in form and substance accept to Lender and subject to Bankruptcy Court approval. |

[Signature page follows]

305163555v3

Docusign Envelope ID: 5AC1C6D4-4BB7-8A67-8181-E10D7AC08660

# TERM SHEET

**Brewster Heights Packing and Orchards, LP and Each of its Affiliates Companies**

Agreed and accepted this May 11, 2026

Sincerely,

<table>
<tr><td>LENDER:<br>**Sandton Capital Solutions Master Fund VI, LP**</td><td>BORROWERS:<br>**Brewster Heights Packing and Orchards, LP**,<br>a Washington limited partnership</td></tr>
<tr><td>By: _Robert Rice_<br>Name: Robert Rice<br>Title: Authorized Person</td><td>By: Gebbers Orchards, Inc., a Washington corporation, its sole General Partner<br><br>By: _Daniel Gebbers_<br>Name: Daniel Gebbers<br>Title: its Interim President and CEO</td></tr>
</table>

*[JOINDER OF ADDITIONAL BORROWERS TO BE ATTACHED]*

Signature Page to DIP Loan Term Sheet

# EXHIBIT B

**Draft Subject to Material Change**

**BHPO - Interim DIP Budget**

*($ in 000s)*

| | Week # | Est.<br>Stub Wk | Est.<br>1 | Est.<br>2 | Est.<br>3 | Est.<br>4 | | **4 Weeks** |
|---|---|---|---|---|---|---|---|---|
| | Week Ending | **6/4-6/6** | **6/13/26** | **6/20/26** | **6/27/26** | **7/4/26** | | **6/4-7/4** |
| **OPERATING CASH FLOW** | | | | | | | | |
| **Operating Receipts** | | | | | | | | |
| CFM Receipts | | $- | $400 | $300 | $1,400 | $1,169 | | $3,269 |
| Processor & Outside WH Receipts | | - | - | - | 1,313 | - | | 1,313 |
| Apple House Paid WH Expenses | | - | 795 | - | 795 | 428 | | 2,018 |
| **Cash Receipts from Operations** | | $- | $1,195 | $300 | $3,508 | $1,597 | | $6,599 |
| **Operating Disbursements** | | | | | | | | |
| Orchard Payroll | | $- | $1,751 | $- | $2,551 | $- | | $4,301 |
| Warehouse Payroll | | - | 1,272 | - | 2,072 | - | | 3,345 |
| Salaried Payroll | | - | - | 300 | 71 | 300 | | 671 |
| Orchard AP Paid | | - | 711 | 711 | 1,422 | 1,422 | | 4,265 |
| Warehouse AP Paid | | - | 461 | 461 | 922 | 1,350 | | 3,193 |
| **Cash Disbursements from Operations** | | $- | $4,195 | $1,472 | $7,038 | $3,072 | | $15,775 |
| **Net Operating Cash Flow** | | $- | ($3,000) | ($1,172) | ($3,530) | ($1,474) | | ($9,176) |
| **NON-OPERATING CASH FLOWS** | | | | | | | | |
| **Chapter 11 Related Cash Flows** | | | | | | | | |
| Chapter 11 Professional Fees | | $- | $- | $- | $- | $- | | $- |
| US Trustee Fees | | - | - | - | - | - | | - |
| Independent Director Fees | | - | 60 | - | - | 60 | | 120 |
| First Day Motion Payments (Primarily CV) | | - | 875 | 875 | 875 | 875 | | 3,500 |
| Buyer Diligence | | - | - | 100 | 100 | 100 | | 300 |
| Utility Deposits | | - | 250 | - | - | - | | 250 |
| **Total Chapter 11 Related Cash Flows** | | $- | $1,185 | $975 | $975 | $1,035 | | $4,170 |
| **Financing Costs** | | | | | | | | |
| Lender Professional Fees | | $- | $- | $- | $- | $- | | $- |
| BMO 2025 Crop Collections | | - | 400 | 300 | 1,313 | - | | 2,013 |
| DIP Lender Fees & Debt Service | | - | - | - | - | - | | - |
| Other Debt Service | | - | - | - | - | - | | - |
| **Total Financing Costs** | | $- | $400 | $300 | $1,313 | $- | | $2,013 |
| **Total Net Cash Flow before Financing** | | $- | ($4,585) | ($2,447) | ($5,818) | ($2,509) | | ($15,359) |
| **LIQUIDITY** | | | | | | | | |
| Beginning Cash Balance | | $708 | $708 | $21,123 | $18,676 | $12,858 | | $708 |
| Total Net Cash Flow before Financing | | - | (4,585) | (2,447) | (5,818) | (2,509) | | (15,359) |
| DIP Facility Draw / (Repayment) | | - | 25,000 | - | - | - | | 25,000 |
| **Ending Cash Balance** | | $708 | $21,123 | $18,676 | $12,858 | $10,349 | | $10,349 |
| **DIP Facility Balance** | | | | | | | | |
| Beginning Balance | | $- | $- | $25,000 | $25,000 | $25,000 | | $- |
| Draw / (Repayment) | | - | 25,000 | - | - | - | | 25,000 |
| **Ending Balance** | | $- | $25,000 | $25,000 | $25,000 | $25,000 | | $25,000 |

26-01136-FPC11    Doc 29    Filed 06/05/26    Entered 06/05/26 17:07:01    Pg 155 of 155